863 So.2d 189 (2003)
Kenneth FRIEDMAN, M.D., Petitioner,
v.
HEART INSTITUTE OF PORT ST. LUCIE, INC., Respondent.
No. SC02-502.
Supreme Court of Florida.
September 25, 2003.
*191 Robert W. Wilkins of Berrocal and Wilkins, Jupiter, FL; David B.B. Helfrey and Philip C. Graham of Helfrey, Simon & Jones, PC., St. Louis, MO; and Roy L. Morris, Arlington, VA, for Petitioner.
Andrew C. Hall, Adam Lamb, and Michael L. Cotzen, and Doron Weiss of Hall, David and Joseph, P.A., Miami, FL; and Stephen Navaretta of Navaretta and Navaretta, P.A., Port St. Lucie, FL, for Respondents.
LEWIS, J.
We have for review Friedman v. Heart Institute of Port St. Lucie, Inc., 806 So.2d 625 (Fla. 4th DCA 2002), which expressly and directly conflicts with the decision in Rosen v. Zoberg, 680 So.2d 1050 (Fla. 3d DCA 1996). Jurisdiction is proper under article V, section 3(b)(3) of the Florida Constitution. As explained herein, we approve the decision below and disapprove that portion of the Rosen decision which conflicts with concepts set forth herein.

Facts and Procedural History
Petitioner Friedman, a physician, was employed by the respondent medical corporation until his termination by the corporation on January 11, 2000. Subsequently, the corporation filed an action alleging that Friedman was in violation of his employment agreement with the medical group. Specifically, the corporation contended that the doctor had opened a competitive practice within fifty miles of his former employer, breaching his agreement not to compete with the Heart Institute. In accordance with the parties' contract, the medical corporation sought injunctive relief to prohibit Friedman from competing within a fifty mile radius of a described intersection or, in the alternative, liquidated damages in the amount of $300,000.
Subsequently, the medical corporation was permitted to amend its complaint to include an additional count asserting violation of Chapter 726 of the Florida Statutes, the Florida Uniform Fraudulent Transfer Act (hereinafter "FUFTA"). The corporation alleged that Friedman had fraudulently transferred the proceeds from the sale of his home, over $400,000, to his fiancee, Christie LeMieux, in an effort to divest himself of assets. LeMieux was added as a party to the civil action. Friedman then moved to stay the fraudulent transfer claim and its concomitant discovery until after the medical corporation obtained a judgment on the underlying claim for damages resulting from breach of contract. The trial court denied the stay, and Friedman petitioned the Fourth District Court of Appeal for certiorari review of the trial court's order.
The Fourth District denied the petition, stating succinctly:
In order to proceed under the Fraudulent Transfer Act it is not necessary that the creditor have a judgment. A "creditor" under the act is a "person who has a claim." A "claim" on which a creditor can proceed can be "unliquidated,... contingent, ... unmatured." The physician recognizes that it is unnecessary for the hospital to have a judgment in order to seek relief against the transferee, but argues that the claim should be stayed....
In section 726.108 the Act authorizes the court to grant a creditor broad relief against the transferee of a fraudulent transfer, including an injunction against further disposition of the asset or the appointment of a receiver to take charge of the asset. A stay of the fraudulent *192 transfer proceedings would preclude the trial court from granting relief under section 726.108 pending the outcome of the claim for damages. We therefore conclude that the trial court did not abuse its discretion in denying the stay and deny certiorari.
Friedman, 806 So.2d at 626-27 (citations omitted). On November 18, 2002, this Court granted review of the Fourth District's decision. See Friedman v. Heart Inst. of Port St. Lucie, Inc., 832 So.2d 104, 104 (Fla.2002) (table).

Analysis
The applicable statutory provisions in this area of the law are exceedingly clear. A "creditor" who possesses a "claim" may seek a number of remedies to prevent the fraudulent transfer of assets. Among the remedies are avoidance of the transfer, attachment, an injunction, appointment of a receiver, and "any other relief the circumstances may require." § 726.108(1)(b), Fla. Stat. (2002). A transfer is fraudulent if made "without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." § 726.106(1), Fla. Stat. (2002).
To utilize the protections of chapter 726, however, a plaintiff must show that he or she has a "claim" which qualifies the party as a "creditor." See § 726.102(4), Fla. Stat. (2002). As defined in section 726.102, a "claim" is broadly constructed and "means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." § 726.102(3), Fla. Stat. (2002). Thus, as is universally accepted, as well as settled in Florida, "A `claim' under the Act may be maintained even though `contingent' and not yet reduced to judgment." Cook v. Pompano Shopper, Inc., 582 So.2d 37, 40 (Fla. 4th DCA 1991); see also Money v. Powell, 139 So.2d 702, 703 (Fla. 2d DCA 1962) ("In this state contingent creditors and tort claimants are as fully protected against fraudulent transfers as holders of absolute claims.").
Two of Florida's district courts of appeal have addressed the issue of whether dependent claims under FUFTA should be stayed pending resolution of underlying substantive claims. In Rosen, the plaintiff filed an action against her attorney for damages in connection with the "churning" of legal files and accompanying overbilling and emotional distress. See Rosen, 680 So.2d at 1051. After the attorney's insurance carrier had previously been placed in receivership, Rosen filed an action alleging that the defendant had violated FUFTA by transferring or placing liens on his assets in favor of relatives or entities under his control. See id. The trial court refused to stay the FUFTA claim pending the resolution of the overbilling, or "Rosen I," claims. See id.
On appeal, the Third District reversed and remanded, stating:
[W]e hold that the trial court abused its discretion in denying Rosen's motions to stay Rosen II. The record demonstrates that resolution of Rosen I is dispositive of Rosen II. If Rosen does not prevail in Rosen I, she is not a creditor, and there is no basis for setting aside the transactions attacked in Rosen II. A stay is the proper vehicle to avoid a waste of judicial resources. On remand, the court shall enter an order staying this action pending resolution of Rosen I.

Id. at 1052 (citations omitted). Thus, under Rosen, it is an abuse of discretion if a trial judge fails to stay a dependent FUFTA claim pending resolution of underlying substantive claims, and a FUFTA claimant *193 cannot proceed as a "creditor" if he or she does not already possess a judgment.
In the decision below, the court reached an entirely opposite conclusion. As noted, the district court here determined that "[a] stay of the fraudulent transfer proceedings would preclude the trial court from granting relief under section 726.108 pending the outcome of the claim for damages." Friedman, 806 So.2d at 627. Therefore, the lower appellate court determined that the trial court did not abuse its discretion in denying the stay, and denied certiorari. See id. Under the Fourth District's decision, the progression of a dependent FUFTA claim is not always stayed as a matter of course, because the statute automatically endows plaintiffs under the Act with "creditor" status. This status allows FUFTA claimants to effect the progression of their cases to judgment at the same time their substantive underlying claims are also being litigated and resolved.
The petitioner's arguments in favor of the validity of Rosen fail in the face of the clarity of chapter 726 and the well-settled principle that "[a] `claim' under the Act may be maintained even though `contingent' and not yet reduced to judgment." Cook, 582 So.2d at 40; see also Invo Florida, Inc. v. Somerset Venturer, Inc., 751 So.2d 1263 (Fla. 3d DCA 2000); Money, 139 So.2d at 703. Indeed, if automatically staying discovery and progression of FUFTA claims was standard and a failure to do so an abuse of discretion, the goal of protecting creditors from wrongful asset transfers would likely be nearly entirely frustrated. Therefore, we disapprove the Third District's conclusion that a claimant which does not possess a judgment "is not a creditor," Rosen, 680 So.2d at 1052, and would not be entitled to proceed under the applicable statutory provisions as to putatively fraudulent transactions. As noted by the court below, under section 726.102(3) and (4), a creditor is merely a person who "has a claim," and a "claim" may be "unliquidated, ... contingent, [or] unmatured." Friedman, 806 So.2d at 626 (quoting § 726.102(3)-(4), Fla. Stat. (2002)). Thus, a creditor such as the medical group in the instant case may seek the benefits under FUFTA, and any motion to stay the chapter 726 claim would be properly addressed to the sound discretion of the trial court.
While the instant action does not present any cognizable constitutional questions for resolution by this Court, and we do not today consider any constitutional issues, reference to our decision in Rasmussen v. South Florida Blood Service, Inc., 500 So.2d 533 (Fla.1987), certainly guides our consideration of any privacy concerns corollary to this cause. In Rasmussen, the plaintiff sought discovery of various blood donation records from the South Florida Blood Service, in an attempt to ascertain the source of his AIDS infection. See id. at 534. Justice Barkett, writing for the majority, offered the following observations and conclusions:
The potential for invasion of privacy is inherent in the litigation process. Under the Florida discovery rules, any nonprivileged matter that is relevant to the subject matter of the action is discoverable. The discovery rules also confer broad discretion on the trial court to limit or prohibit discovery in order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Under this authority, a court may act to protect the privacy of the affected person.
In deciding whether a protective order is appropriate in a particular case, the court must balance the competing interests that would be served by granting discovery or by denying it. Thus, the discovery rules provide a framework *194 for judicial analysis of challenges to discovery on the basis that the discovery will result in undue invasion of privacy. This framework allows for broad discovery in order to advance the state's important interest in the fair and efficient resolution of disputes while at the same time providing protective measures to minimize the impact of discovery on competing privacy interests.
Id. at 535 (quotation marks and citations omitted).
Under Florida law, the petitioner's concerns regarding the effect of discovery on dependent FUFTA claims are more properly addressed not by automatically staying the actions, but by other means and the placement of discretionary limitations upon discovery by trial courts. "[T]he constitutional right of privacy undoubtedly expresses a policy that compelled disclosure through discovery be limited to that which is necessary for a court to determine contested issues...." Woodward v. Berkery, 714 So.2d 1027, 1036 (Fla. 4th DCA 1998). Thus, as is always the case, "the scope and limitation of discovery is within the broad discretion of the trial court." SCI Funeral Servs. of Fla., Inc. v. Light, 811 So.2d 796, 798 (Fla. 4th DCA 2002).
In exercising its discretion to prevent injury through abuse of the action or the discovery process within the action, trial courts are guided by the principles of relevancy and practicality. Clearly, "the disclosure of personal financial information may cause irreparable harm to a person forced to disclose it, in a case in which the information is not relevant." Straub v. Matte, 805 So.2d 99, 100 (Fla. 4th DCA 2002); see also Mogul v. Mogul, 730 So.2d 1287, 1290 (Fla. 5th DCA 1999). As noted by this Court, "As appropriate, the trial court may conduct an in-camera inspection of the subject records. In that context, the trial court may balance (on an ad hoc basis) `the right to privacy and the right to know.'" Alterra Healthcare Corp. v. Estate of Shelley, 827 So.2d 936, 945-46 (Fla. 2002); (quoting Montana Human Rights Div. v. City of Billings, 199 Mont. 434, 649 P.2d 1283, 1290 (1982)); see also Pyszka, Kessler, Massey, Weldon, Catri, Holton & Douberley, P.A. v. Mullin, 602 So.2d 955, 955 (Fla. 3d DCA 1991). Additionally, Florida's trial courts are endowed with the authority to require the proponent of a claim to post bond. See, e.g., Med. Facilities Dev., Inc. v. Little Arch Creek Props., Inc., 675 So.2d 915, 918 (Fla.1996).
Certainly, the substance of the Florida Rules of Civil Procedure, buttressed by litigant-protecting caselaw, strikes the proper balance between allowing appropriate discovery and protecting litigants' privacy and equitable interests. While the general rule in Florida is that personal financial information is ordinarily discoverable only in aid of execution after judgment has been entered, see Gruman v. Bankers Trust Co., 379 So.2d 658, 659 (Fla. 3d DCA 1980); Cooper v. Fulton, 117 So.2d 33, 35-36 (Fla. 3d DCA 1960), where materials sought by a party "would appear to be relevant to the subject matter of the pending action," the information is fully discoverable. Epstein v. Epstein, 519 So.2d 1042, 1043 (Fla. 3d DCA 1988). A party's finances, if relevant to the disputed issues of the underlying action, are not excepted from discovery under this rule of relevancy, and courts will compel production of personal financial documents and information if shown to be relevant by the requesting party. See id.; Jacobs v. Jacobs, 50 So.2d 169, 173 (Fla.1951); Florida Gaming Corp. of Delaware v. American Jai-Alai, Inc., 673 So.2d 523, 524 (Fla. 4th DCA 1996) ("[T]he financial information at issue was relevant to the calculation of damages under the breach of contract *195 count. Discovery of these matters was proper."); Citibank, N.A. v. Plapinger, 461 So.2d 1027, 1027 (Fla. 3d DCA 1985); Ashcraft v. Harvey, 315 So.2d 530, 531 (Fla. 4th DCA 1975).
As we stated in Martin-Johnson, Inc. v. Savage, 509 So.2d 1097 (Fla.1987), "Litigation of a non-issue will always be inconvenient and entail considerable expense of time and money for all parties in the case.... [W]e do not ignore petitioner's valid privacy interest in avoiding unnecessary disclosure of matters of a personal nature. We believe, however, that our discovery rules provide sufficient means to limit the use and dissemination of discoverable information via protective orders." Martin-Johnson, 509 So.2d at 1100. Dependent FUFTA claims should not automatically be stayed, and any motion requesting halting the progression of an action is properly addressed and resolved by the trial court in the exercise of its sound discretion as to both how the action may proceed and the discovery matters related thereto. We see no need to limit this discretion with specific rules or formulas, and note that there are a number of decisions which provide guidance for courts performing the balancing of the various interests affected by a party's motion seeking to stay a civil action. See, e.g., Landis v. N. Am. Co., 299 U.S. 248, 251, 57 S.Ct. 163, 81 L.Ed. 153 (1936); Volmar Distribs., Inc. v. New York Post Co., Inc., 152 F.R.D. 36, 38 (S.D.N.Y.1993); Guirola-Beeche v. United States Dep't of Justice, 662 F.Supp. 1414, 1416 (S.D.Fla.1987).

Conclusion
In accordance with the foregoing, we approve the decision of the Fourth District below, Friedman v. Heart Institute of Port St. Lucie, Inc., 806 So.2d 625 (Fla. 4th DCA 2002), and disapprove that portion of Rosen v. Zoberg, 680 So.2d 1050 (Fla. 3d DCA 1996), to the extent it conflicts with Friedman and is inconsistent with this opinion.
It is so ordered.
ANSTEAD, C.J., and WELLS, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.