889 So.2d 905 (2004)
ALL ABOUT CRUISES, INC., and Sheryl Myman a/k/a Sheryl Myman-Miller, Petitioners,
v.
CRUISE OPTIONS, INC., Respondent.
No. 4D04-3107.
District Court of Appeal of Florida, Fourth District.
December 8, 2004.
Rehearing Denied January 10, 2005.
*906 Michael W. Moskowitz and Ari J. Glazer of Moskowitz, Mandell, Salim & Simowitz, P.A., Fort Lauderdale, for petitioners.
Richard A. Asselta and Nanci S. Landy of Landy & Asselta, P.A., N. Miami Beach, for respondent.
PER CURIAM.
Petitioners, All About Cruises, Inc. ("AAC") and Sheryl Myman-Miller, seek certiorari review of an order compelling discovery. We deny the petition.
Cruise Options, Inc. is a travel agency. It sued petitioners in connection with a contract whereby AAC would work as an independent contractor booking cruises. In return, Cruise Options would receive a percentage of the commissions AAC was paid by the cruise lines.
Cruise Options alleged that AAC failed to pay its contractual commissions. Petitioner Sheryl Myman-Miller is the owner of AAC.
Cruise Options alleged that throughout the time period of the contract, Myman disregarded the corporate entity of AAC by failing to hold shareholder's meetings, failing to hold board of director's meetings, failing to maintain the corporate books and records, using corporate funds to pay personal expenses, and "intermingling" her personal funds with that of the corporation.
Cruise Options alleged that instead of paying it the commissions owed, AAC and its "alter ego" Myman, fraudulently converted the money from the corporate account and used that money to pay personal expenses such as her divorce lawyer, her jewelry expenses, as well as her liposuction surgery.
The complaint details causes of action for breach of contract, an equitable accounting, and to "pierce the corporate veil."
The petition challenges three discovery requests. The trial court granted Cruise Options' motion to compel with certain restrictions.
Certiorari review lies to review a challenge to production as protected by privilege or work product. The reasoning is that such is the kind of information that "may reasonably cause material injury of an irreparable nature." Allstate Ins. Co. v. Langston, 655 So.2d 91, 94 (Fla.1995) (quoting Martin-Johnson, Inc. v. Savage, 509 So.2d 1097, 1100 (Fla.1987)); Bared & Co. v. McGuire, 670 So.2d 153 (Fla. 4th DCA 1996). Nonetheless, and applicable to request # 7,[1] this court generally will not exercise its certiorari review where the objection is that the requested production is vague, overbroad, and irrelevant. Eberhardt v. Eberhardt, 666 So.2d 1024, 1025 (Fla. 4th DCA 1996) (dismissing petition seeking to quash order requiring production of income tax returns in case involving claims for accounting, fraud, breach of contract, constructive trusts, and rescission of a deed); cf. Woodward v. Berkery, 714 So.2d 1027 (Fla. 4th DCA), rev. denied, 717 So.2d 528 (Fla.1998) (broad financial discovery order quashed where discovery was sought to embarrass and bring undue pressure on litigant through unwarranted publicity of sensitive personal information).
*907 Request # 6 involves Myman's billing statements and invoices from her divorce lawyer. Though this claim potentially implicates Myman's attorney-client privilege with her divorce lawyer, Myman is permitted to redact any descriptions of "legal services rendered which would reveal the mental impressions and opinions of counsel."
The remaining point concerns Cruise Options' request seeking all personal checking account information of Myman, including all cancelled checks from 1997 to the present. The trial court limited this production to a specific time frame. As set forth above, the complaint alleges a count seeking to pierce the corporate veil.
This point is controlled by the cases of Friedman v. Heart Institute of Port St. Lucie, Inc., 863 So.2d 189, 194 (Fla.2003), and In re Estate of Sauey, 869 So.2d 664 (Fla. 4th DCA 2004). Sauey involved probate litigation. The decedent's surviving spouse petitioned for the removal of the co-personal representatives, claiming that they had financial interests that conflicted with their obligations as personal representatives.
An order was issued compelling production to the surviving spouse of financial information from the personal representatives. Sauey, 869 So.2d at 665. Citing the supreme court's decision in Friedman,[2] 863 So.2d at 194, we stated: "[W]here materials sought by a party `would appear to be relevant to the subject matter of the pending action,' the information is fully discoverable." Sauey, 869 So.2d at 665. Further, we commented that "[t]he order compelling production of relevant financial information cannot be the object of a writ of certiorari because there is no irreparable harm." Id. (citing Eberhardt, 666 So.2d at 1025) (emphasis added).
In Friedman, the claims involved breach of an employment agreement and a violation of the Florida Uniform Fraudulent Transfer Act (FUFTA). The allegation was that Dr. Friedman fraudulently transferred the proceeds from the sale of his home to his fiancee, also a party, to divest himself of assets. Friedman, 863 So.2d at 191.
Resolving conflict on this point, the supreme court held that the FUFTA claim was not premature. Id. at 193. Turning to the related discovery issue, concerning the disclosure of personal financial information, Friedman acknowledged that the disclosure of personal financial information may cause irreparable harm to a person forced to disclose it in a case in which the information is not relevant. Id. at 194 (citing Straub v. Matte, 805 So.2d 99, 100 (Fla. 4th DCA 2002)).
Nonetheless, this was a matter of discretion for the trial court. Friedman. To facilitate its exercise of discretion, the trial court "may" conduct an in camera inspection or may require the proponent of the claim to post bond. Friedman, 863 So.2d at 194.
Neither is required though, and we note that the supreme court commented that it saw no "need to limit this discretion with specific rules or formulas...." Id. at 195. Having reviewed Cruise Options' allegations and the above outlined authority, we find that the trial court's order does not depart from the essential requirements of law warranting extraordinary review. Bared & Co. v. McGuire, 670 So.2d 153 (Fla. 4th DCA 1996).
GROSS and HAZOURI, JJ., concur.
FARMER, C.J., concurs specially with opinion.
*908 FARMER, C.J., concurring specially.
Discovery of personal financial information in civil cases  other than divorce  is generally irrelevant and is usually prohibited before final judgment.[3] For a long time, one way around this ban was to allege a claim for punitive damages, thereby making the defendant's personal wealth ostensibly relevant even without a judgment.[4] But the Legislature removed that dodge several years ago. See § 51, Ch. 86-160, Laws of Fla. Now no such discovery is permitted until the trial judge determines there is a valid claim for punitive damages to use as the predicate for such discovery.[5]
Another way around the ban in a breach of contract action  frequently used in commercial cases like this  is where a party also asserts a right to an accounting from the other contracting party on the basis of the contract debt. With corporate parties, this is joined with allegations that the principal shareholder(s) has(have) misused the corporate entity for personal purposes and therefore it may be disregarded. The claimed right to an accounting is thus part of an attempt to pierce the corporate veil. Of course, personal financial information might then be arguably relevant, depending on whether there is anything to the accounting, alter ego claim. If that claim is not tenable, discovery of such information should be in the same category as premature punitive damage discovery under section 768.72. Neither should be countenanced before final judgment.
In reality, the well known standard for pretrial review of discovery orders by certiorari makes the odds very high against an appellate court quashing an order allowing personal worth discovery before the damage is done. In Martin-Johnson v. Savage, 509 So.2d 1097, 1099 (Fla.1987), the court made clear that a non-final order for which no appeal is provided by rule is reviewable by certiorari only in extremely limited circumstances. The order must depart from the essential requirements of law and thus cause material injury to the petitioner throughout the remainder of the proceedings, effectively leaving no adequate remedy on appeal. The court held that even a valid privacy interest in avoiding unnecessary disclosure of matters of a personal nature is insufficient to warrant review of a pretrial order by certiorari.[6]
In this case, petitioner has not pointed out any statutory basis  like section 768.72  to make the issue of personal worth discovery reviewable at this point. That means she is stuck with final review. The damage may long since be done if *909 there is no legal basis to respondent's claim to pierce the corporate veil and for the accounting. The possibility of injustice is thus obvious. But my hands are tied by Martin-Johnson and the cases that have followed it.
I write to stress, however, that Martin-Johnson's comment about sensitive personal financial information was made only cursorily at the end of the opinion where the court said:
"we do not ignore petitioner's valid privacy interest in avoiding unnecessary disclosure of matters of a personal nature. We believe, however, that our discovery rules provide sufficient means to limit the use and dissemination of discoverable information via protective orders."
509 So.2d at 1100.[7] Make no mistake about it, the supreme court is really saying here that appellate courts can ignore the infringement of important privacy interests created by civil litigation procedures because trial judges have remedial tools available and can therefore be relied on to do the right thing.
Well, if that were true there would be little need for appeals  or for appellate courts. The law is filled with remedies. If their very existence were enough to refrain from reviewing a miscarriage of justice arising from their misuse or nonuse, why have any extraordinary review available at all? In what kind of case could we not rely on trial courts doing the right thing with the many tools at hand? For that matter, why bother at all with any appellate review? Why not just take the erasers off the pencils  or should I say take the delete keys off the word processors  and let authors try to get it right the first time?
This rationale simply won't do. If it is really too disruptive to permit interlocutory review, then we judges should say so. We should make the reasons apparent for limiting review to final judgment. What we should not do is attempt to justify a blanket refusal by implying that trial judges should be relied on to use the rules at hand to correct discovery abuses.
In my opinion, the currently popular justification for limiting review of personal wealth discovery orders floats in clouds of fantasy. In their mandatory judicial education courses, Florida trial judges are well and truly steeped in an imperative of managing civil cases to avoid that ever-dreaded backlog. To be sure, the horror is real, arising from the institutional imperative to assign ever more cases to sitting judges because of the lack of new judges to keep pace with population growth.
Trial judges are forced to administer dockets too large to be fairly managed. That means there are going to be some for whom it is acceptable to allow discovery, whose only evidence-producing propensity is inversely proportional to its capacity to prejudice one of the parties. Litigants are thus pressed to settle. Until the rigid rule of Martin-Johnson is relaxed, there will be no relief in cases like this.
If I were the trial judge, I would not allow personal worth discovery until the claim to pierce the corporate veil and for an accounting had survived a motion for summary judgment. I have no idea whether this claim would make the cut  petitioner says it won't  but that is beyond my review authority at this stage.
All of this is to say I have no choice but to join in a denial of certiorari, even *910 though there may well be an essential injustice perpetuated by it.
NOTES
[1] Request # 7 concerns various corporate financial records, such as accounts receivable and payable.
[2] Friedman quoted Epstein v. Epstein, 519 So.2d 1042, 1043 (Fla. 3d DCA 1988).
[3] See Friedman v. Heart Inst. of Port St. Lucie Inc., 863 So.2d 189, 194 (Fla.2003) (general rule is that personal financial information is ordinarily discoverable only in aid of execution after judgment; where materials sought by a party appear relevant to subject matter of pending action information is fully discoverable).
[4] See Tennant v. Charlton, 377 So.2d 1169 (Fla.1979) (no reason to place financial worth of defendant in special category with regard to discovery process; trial court may limit such discovery to protect party from annoyance, embarrassment, oppression, or undue burden or expense).
[5] See Ch. 86-160, § 51, Laws of Fla. (codified as § 768.72, Fla. Stat. (2003)); Globe Newspaper Co. v. King, 658 So.2d 518 (Fla.1995) (statute on pleading punitive damages creates substantive legal right not to be subjected to financial worth discovery until trial court determines there is reasonable evidentiary basis for punitive damages).
[6] See also Bared & Co. v. McGuire, 670 So.2d 153 (Fla. 4th DCA 1996) (same); Eberhardt v. Eberhardt, 666 So.2d 1024 (Fla. 4th DCA 1996) (discovery requiring production of personal income tax returns in case involving claim for breach of contract and accounting not irreparable).
[7] See also Friedman, 863 So.2d at 195.