[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15992
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cv-22032-KMW


SOUTH MIAMI HOLDINGS, LLC,
a Florida limited liability company,

Plaintiff-Appellant,

versus

FEDERAL DEPOSIT INSURANCE CORPORATION,
as receiver for Sun American Bank,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 12, 2013)

Before CARNES, Chief Judge, BARKETT and HULL, Circuit Judges.

PER CURIAM:

In this civil loan-agreement case, Plaintiff-Appellant South Miami Holdings, LLC, appeals from the district court's grant of Defendant-Appellee Federal Deposit Insurance Corporation's ("FDIC") motion to dismiss on mootness grounds.  The FDIC is the receiver of the failed Sun American Bank that entered into the agreement that is the subject of this suit.  After review, we affirm the dismissal.

## I.  BACKGROUND

### A.    Factual Background & Proceedings in State Court

On February 25, 2008, Plaintiff South Miami Holdings, LLC ("SMH") entered into a $15 million Loan Commitment Agreement with Sun American Bank ("Sun American").  On July 11, 2008, citing several reasons, Sun American cancelled the Agreement and refused to fund the loan. SMH alleged that it suffered monetary damages as a result of Sun American's cancellation of the Agreement, as SMH was forced to seek financing elsewhere at a higher interest rate with less favorable terms and incurred other costs and expenses associated with the search.

After Sun American cancelled the Agreement, Plaintiff SMH sued Sun American in Florida state court.  In its complaint, as amended in December 2009, SMH alleged state law claims against Sun American for (1) breach of express contract; (2) breach of implied-in-fact contract; (3) breach of implied duty of good faith and fair dealing; (4) negligent misrepresentation; and (5) promissory estoppel.

2

While SMH's state court suit against Sun American was pending, on March 5, 2010, the Florida Office of Financial Regulation closed Sun American and appointed the FDIC as receiver of Sun American.  On the same day, a separate bank, First-Citizens Bank & Trust Company ("First-Citizens"), entered into a Purchase and Assumption Agreement (the "P&A Agreement") with the FDIC.  In the P&A Agreement, First-Citizens agreed to assume all of Sun American's deposits and assets, as well as some of Sun American's liabilities.  Under the P&A Agreement, the FDIC retained some of Sun American's contingent, unliquidated liabilities, including those related to "all other defensive litigation."

In light of its appointment as receiver, on May 12, 2010, the FDIC filed a "Motion to Substitute Defendant" in Plaintiff SMH's state court suit against Sun American.  In this motion, the FDIC noted that it had retained Sun American's "liabilities . . . arising from this action" and as Sun American's successor-in-interest, should be substituted as the Defendant in the suit.  The state court entered an "Agreed Order" granting the FDIC's motion on June 9, 2010.

**B.     Initial Proceedings in Federal District Court**

On June 17, 2010, the now-Defendant FDIC, as receiver, removed SMH's suit to federal district court, citing the statutory basis for federal question jurisdiction, 28 U.S.C. § 1441(b) (2010), and 12 U.S.C. § 1819(b)(2)(A), which provides that, subject to exceptions not relevant here, "all suits of a civil nature at

common law or in equity to which the [FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States." Plaintiff SMH moved to remand the action to state court, but it did not (1) challenge the FDIC's substitution as the proper defendant, based on the FDIC's assumption of Sun American's potential liability to SMH, or (2) seek to join any additional defendants.

The district court denied Plaintiff SMH's motion to remand on August 2, 2010, and the litigation proceeded in that district court. Following the district court's rulings on SMH's and the FDIC's cross-motions for summary judgment on August 1, 2011, the case was set for a bench trial on SMH's remaining claims of breach of express contract, breach of implied-in-fact contract, and breach of implied duty of good faith and fair dealing.

Before trial, the FDIC issued a "Determination of Insufficient Assets To Satisfy Claims Against Financial Institution in Receivership" (the "No-Value Determination") regarding Sun American. See 76 Fed. Reg. 52,663-01 (Aug. 23, 2011). The No-Value Determination announced that the assets of the Sun American receivership estate, "together with maximum possible recoveries on claims against directors, officers, and other professionals" was $86,789,915, while the total "administrative expenses and depositor liabilities" owed by Sun American equaled $220,441,349. Id. This approximately $86 million in assets, and $220 million in liability, left a net insolvency of $134 million.

4

Accordingly, the FDIC, as receiver, determined that due to the statutory order of priority given to administrative expenses and depositor liabilities, "insufficient assets exist to make <u>any</u> distribution on general unsecured creditor claims (and any lower priority claims) and therefore all such claims, asserted or unasserted, will recover nothing and have no value." [1] <u>Id.</u> (emphasis added).

## C.    Proceedings on the FDIC's Motion to Dismiss

Following the issuance of the No-Value Determination, the Defendant FDIC, as receiver, moved the district court to dismiss Plaintiff SMH's suit for a lack of subject matter jurisdiction due to mootness or, alternatively, on prudential mootness grounds.  The FDIC reasoned that (1) federal law limited the FDIC's liability to any creditor of a failed bank to the amount the creditor would have recovered had the bank been liquidated; (2) the No-Value Determination meant that there was no possibility of SMH ever recovering on a judgment against the FDIC as receiver, as there were insufficient assets to satisfy any claims below the depositor priority level, including those claims made by unsecured judgment

---

[1]Pursuant to 12 U.S.C. § 1821(d)(11)(A), the "amounts realized from the liquidation or other resolution of any insured depository institution by any receiver appointed for such institution shall be distributed to pay claims (other than secured claims to the extent of any such security) in the following order of priority":

(1) "[a]dministrative expenses of the receiver";
(2) "[a]ny deposit liability of the institution";
(3) "[a]ny other general or senior liability of the institution . . .";
(4) "[a]ny obligation subordinated to depositors or general creditors . . .";
(5) "[a]ny obligation to shareholders or members arising as a result of their status as shareholders or members (including any depository institution holding company or any shareholder or creditor of such company)."

creditors like SMH; and (3) the inability of Plaintiff SMH to ever recover from Defendant FDIC meant there was no live case or controversy between the parties, SMH's lawsuit was moot, and the district court should dismiss it for a lack of subject matter jurisdiction.

Alternatively, the FDIC argued that even if the district court found that a case or controversy still existed between the parties, the district court should nevertheless dismiss the case on prudential mootness grounds because a proceeding on the merits would serve "no practical purpose" and a trial would be no more than a "completely hollow act."

SMH opposed the motion, arguing that it still had "a viable theory under which recovery on a judgment would be possible." SMH did not contend that it could ever recover on a judgment against the FDIC. Instead, SMH stated that it could pursue a separate action under the Florida Uniform Fraudulent Transfers Act ("FUFTA"), Fla. Stat. §§ 726.101, et seq., against First-Citizens, which acquired Sun American's deposit liabilities and assets through the P&A Agreement. SMH's theory in this hypothetical suit would be that First-Citizens failed to "pay fair value for one or more of the [Sun American] assets that it purchased from the FDIC." According to SMH, it could not pursue appropriate discovery on its FUFTA claim against First-Citizens without first establishing itself as a creditor of the FDIC as receiver. SMH required this discovery because the P&A Agreement between

First-Citizens and the FDIC did not set out the prices that First-Citizens paid to acquire Sun American's assets.

The FDIC challenged SMH's claim that it could even sue First-Citizens under Florida law.  Specifically, the FDIC argued that federal law, and in particular the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 (1989) ("FIRREA"), preempted any state-law fraudulent conveyance claims against First-Citizens by SMH.  The FDIC also argued that by allowing an unsecured creditor like SMH to trace assets and recover damages against third parties, the district court effectively would be giving SMH a preference over other similarly-situated and higher priority creditors of the failed bank, in contravention of the § 1821(d)(11)(A) claim priority order.

After holding oral argument, the district court granted the FDIC's motion to dismiss.  The district court noted that SMH did not challenge (1) the FDIC's No-Value Determination, of which the district court took judicial notice after an earlier, unopposed motion to do so by the FDIC; (2) the unsecured status of its potential claim against the FDIC; (3) the FDIC's retention of Sun American's defense litigation liabilities under the P&A Agreement; and (4) that the Sun American receivership would "at no point . . . recover assets sufficient to pay [SMH's] claim in this litigation."  In light of these undisputed facts, the district court concluded that SMH was plainly "without a viable means of recovery," and

7

this lack of redressability of SMH's claims "deprived [the district court] of jurisdiction to continue hearing [those] claims."

Turning to SMH's asserted "viable means of utilizing a judgment" in the event that one were ever entered against the FDIC in this suit, the district court held that SMH's purported fraudulent transfer theory in the hypothetical case against First-Citizens was preempted by federal law, stating:

> [w]hile innovative, even if [SMH] could prove the elements of such a claim, and even if the facts at this juncture were not a circumvention of the rights of other superior creditors, . . . Florida's fraudulent transfer law would be preempted by federal law governing transfers of assets by the FDIC[].
> . . . .
> The authority conferred on the FDIC under [12 U.S.C. §] 1823(c) to effectuate asset transfers in purchase and assumption agreements trumps any state law that would otherwise invalidate or call into question such transfers.

The district court also noted, as conceded by SMH's counsel at oral argument, that a judgment against the FDIC in SMH's favor in this action was not a necessary precondition to SMH pursuing a suit against First-Citizens under FUFTA, even assuming such an action was not preempted by federal law.

Thus, because allowing SMH "to obtain judgment against the FDIC would do no more than transform [SMH] from a contingent unsecured creditor that could not recover to a judgment creditor that could not recover," the district court dismissed as moot SMH's complaint with prejudice and closed the case. SMH timely appealed.

8

## II.  DISCUSSION

We review the question of mootness de novo.  Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla., 382 F.3d 1276, 1282 (11th Cir. 2004).  "[I]f a case is moot, plainly we lack subject matter jurisdiction to evaluate [its] merits. . . ."  Id. at 1281 n.3.

Article III of the Constitution limits the jurisdiction of federal courts to live "Cases" and "Controversies."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 559, 112 S. Ct. 2130, 2136 (1992).  To satisfy the case or controversy requirement, a plaintiff "must have suffered some actual injury that can be redressed by a favorable judicial decision."  Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70, 104 S. Ct. 373, 375 (1983).

Even if a suit presented a live controversy when filed, if events occur subsequent to the filing of the suit that deprive a court of the ability to provide the plaintiff with meaningful relief, then the case is moot and must be dismissed for lack of jurisdiction.  Troiano, 382 F.3d at 1281–82; see also Arizonans for Official English v. Arizona, 520 U.S. 43, 68 n.22, 117 S. Ct. 1055, 1069 n.22 (1997) ("The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." (internal quotation marks omitted)).  "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.  As this Court has

explained, put another way, a case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." Troiano, 382 F.3d at 1282 (alteration omitted) (quoting Al Najjar v. Ashcroft, 273 F.3d 1330, 1335–36 (11th Cir. 2001) (per curiam)).

We agree with the district court that the FDIC's No-Value Determination rendered SMH's claims moot. Under 12 U.S.C. § 1821(i)(2), a claimant's recovery against the FDIC acting as a receiver is limited to the amount the claimant would have received in liquidation of the closed bank; a claimant may not look to the FDIC's coffers for relief. See 12 U.S.C. § 1821(i)(2); see also First Ind. Fed. Sav. Bank v. FDIC, 964 F.2d 503, 507 (5th Cir. 1992). Any possible recovery by SMH against the FDIC must therefore come from the receivership estate, and SMH does not dispute this point.

In this case, the FDIC, as receiver, has determined that general, unsecured creditor claims against the receivership of Sun American "have no value," meaning there are not and never will be sufficient assets to pay any dividend, distribution, or payment to claims of general creditors. See 76 Fed. Reg. 52,663-01 (Aug. 23, 2011). This determination is a final agency action, and is therefore subject to challenge only pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 701. See, e.g., Santopadre v. Pelican Homestead & Sav. Assoc., 937 F.2d 268, 272 (5th Cir. 1991). The FDIC's finding that claims such as those raised in SMH's

10

complaint are worthless is therefore binding on this Court and is preclusive as to whether there are now or ever will be assets sufficient to satisfy the claims.[2] See Adams v. Resolution Trust Corp., 927 F.2d 348, 354 (8th Cir. 1991).

Because no assets remain in the receivership, nor will the receivership ever obtain assets necessary to satisfy a judgment in SMH's favor, SMH's claims against the FDIC as receiver for Sun American are moot. See Henrichs v. Valley View Dev., 474 F.3d 609, 615 (9th Cir. 2007); Maher v. FDIC, 441 F.3d 522, 526 (7th Cir. 2006) ("Since the FDIC's corporate liability is limited to the assets of the receivership, and since the receivership is now . . . without assets, there is no possible relief for this court to order . . . against the FDIC in its corporate capacity. We therefore dismiss for lack of a justiciable case or controversy."); FDIC v. Kooyomjian, 220 F.3d 10, 15 (1st Cir. 2000) ("The FDIC's worthlessness determination is unchallenged and, in the absence of a recoupment remedy,

---

[2]To the extent that SMH seeks to challenge the FDIC's No-Value Determination through this suit, such a collateral challenge to a final agency action is impermissible. See 281-300 Joint Venture v. Onion, 938 F.2d 35, 38 (5th Cir. 1991) ("While the [Federal Home Loan Bank Board's] findings and conclusions regarding the worthlessness of unsecured creditor claims constitute final agency action, they are subject to review under the Administrative Procedure Act (APA). Joint Venture, however, never sought judicial review of the FHLBB's determination of worthlessness. Instead, it argues that the determination alone is insufficient to prove that there will never be any assets in the receivership to satisfy the claims of unsecured creditors. Previously we have determined that such a collateral attack on the FHLBB's determination is improper and that, absent evidence to the contrary, we are bound by its decision." (citation omitted)); Adams v. Resolution Trust Corp., 927 F.2d 348, 354 n.15 (8th Cir. 1991) ("A . . . determination of worthlessness is a final agency action, which is reviewable under the provisions of the Administrative Procedure Act in an action against the [FDIC], but not subject to collateral attack through discovery or other means in individual lawsuits against the receiver." (internal quotation marks and citation omitted)).

11

precludes any relief for defendants even if they were successful on their . . . claim and obtained a favorable judgment."); Adams, 927 F.2d at 354 (holding that where the Federal Savings and Loan Insurance Corporation would never possess any assets to satisfy the plaintiff's claim, the claim was moot).

On appeal, SMH does not contend that it could ever recover on a judgment against the FDIC. Instead, SMH argues that the district court's mootness finding was flawed for three reasons that are only indirectly related to its claims against the FDIC as receiver: (1) the district court failed to account for the possibility that First-Citizens, through the P&A Agreement, assumed liability for SMH's claims against Sun American (and that if this were true, SMH could therefore potentially recover on a judgment in this case against First-Citizens); (2) SMH required a judgment against the FDIC to establish standing as a "wronged party" to challenge the FDIC's worthlessness determination under the APA; and (3) the district court's determination that any potential state-law fraudulent transfer claim against First-Citizens would be preempted was erroneous.[3]

As to the first two arguments, SMH never made them to the district court, despite having the opportunity to do so in its response to the FDIC's motion to

_____

[3]As to the third argument, SMH challenges the district court's preemption ruling on the specific grounds that (1) it amounted to a taking of SMH's property; (2) the FDIC bound itself, under the P&A Agreement, to pay fair market value for Sun American's assets, thereby circumscribing the FDIC's otherwise broad discretion to dispose of the assets of failed banks; and (3) the P&A Agreement contained a choice-of-law clause in which First-Citizens and the FDIC agreed to be bound by Florida law.

dismiss.  It is well-settled that "[a]rguments raised for the first time on appeal are not properly before this Court."  Hurley v. Moore, 233 F.3d 1295, 1297 (11th Cir. 2000); see Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004) ("This Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this [C]ourt." (internal quotation marks omitted)).  Accordingly, we decline to address these arguments further.

As with its first two arguments, SMH also never raised its third argument before the district court.  We note, however, that the preemption issue only arose in the government's reply to SMH's response to the motion to dismiss, and thus, there was never an opportunity for SMH to rebut the FDIC's preemption argument.  In any event, we need not address the merits of the district court's preemption ruling.  Even assuming arguendo that a Florida state law fraudulent transfer claim brought by SMH against First-Citizens would not be preempted, this determination ultimately does not affect our examination of whether the claims asserted by SMH against the FDIC in this case are moot.  Instead, the mootness inquiry turns on whether the district court can provide redress, or "meaningful relief," with respect to the particular claims asserted by SMH against a particular party, the FDIC.  Troiano, 382 F.3d at 1282.

13

In its "viable theory under which recovery on a judgment would be possible," SMH addresses the redressability of its claims against the FDIC by attempting to show that it could use a money judgment against the FDIC as a "sword" in a yet-to-be-filed fraudulent transfer suit against First-Citizens. This attempted showing misses the mark.

"Redressability is established when a favorable decision would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist., 647 F.3d 1296, 1303–04 (11th Cir. 2011) (emphasis added) (internal quotation marks omitted). However, Florida's fraudulent transfer statute, FUFTA, "does not distinguish between creditors who hold judgments and those who do not." Mied, Inc. v. Summit Healthcare Inc., 849 So. 2d 397, 398 (Fla. 4th DCA 2003); see Friedman v. Heart Inst. of Port St. Lucie, Inc., 863 So. 2d 189, 193 (Fla. 2003) (noting "the well-settled principle that a claim under [FUFTA] may be maintained even though contingent and not yet reduced to judgment." (internal quotation marks and alterations omitted)); see also Fla. Stat. § 726.102(4)–(5) (defining, for purposes of FUFTA, a "claim" as "a right to payment, whether or not the right is reduced to judgment" and a "creditor" as "a person who has a claim"). Because FUFTA permits claims by non-judgment-holding creditors, and assuming arguendo there is some FUFTA claim out there, SMH could pursue First-Citizens

14

under FUFTA without a judgment against the FDIC.  Therefore, a judgment against the FDIC in this case would not result in a "a significant increase in the likelihood that [SMH] would obtain relief that directly redresses the injury [it] suffered."  Fla. Wildlife, 647 F.3d at 1304.

In sum, even assuming arguendo that (1) SMH obtained a judgment in its favor on its claims against the FDIC in the present case, and (2) SMH could pursue First-Citizens in a separate FUFTA action (i.e., that SMH's FUFTA claims were not preempted by federal law), this speculative sequence of events does not satisfy the redressability requirement.  This is because SMH could pursue a claim (if it has one) against First-Citizens even without obtaining a judgment against the FDIC.[4]  Accordingly, SMH's claims against the FDIC are moot.[5]

### III.  CONCLUSION

In light of the foregoing, we affirm the district court's dismissal on mootness grounds of SMH's complaint against the FDIC.

**AFFIRMED.**

---

[4]Nothing herein shall be construed as suggesting SMH even has a claim, much less a viable one, against First-Citizens.

[5]In addition, we retain significant doubts as to whether SMH's redressability theory—a collateral use against a non-party of an otherwise non-recoverable judgment—is the type of "meaningful relief" that is even contemplated by the mootness inquiry, insofar as such collateral relief would not "directly redress[]" SMH's alleged injury.  Fla. Wildlife, 647 F.3d at 1304 (emphasis added); Troiano, 382 F.3d at 1282.

15