ORDER VACATED; REMANDED.

WOLF, BILBREY, and M.K. THOMAS, JJ., concur.

Dr. Erwin D. JACKSON, as an elector of the City of Tallahassee, Petitioner/Appellant,

v.

**LEON COUNTY ELECTIONS CANVASSING BOARD; Scott C. Maddox, as the successful candidate for Tallahassee City Commission, Seat 1; and City of Tallahassee, a Florida municipal corporation, Respondents/Appellees.**

Nos. 1D16–4870, 1D16–5090.

District Court of Appeal of Florida, First District.

Nov. 22, 2016.

Charles Burns Upton II of the Upton Law Firm, P.L., Tallahassee, for Petitioner/Appellant.

No appearance for Respondent/Appellee Leon County Elections Canvassing Board.

Dan R. Stengle of Dan R. Stengle, Attorney, LLC, Tallahassee, and Stephen Marc Slepin of The Maddox Horne Law Firm, Tallahassee, for Respondent/Appellee Scott C. Maddox.

Louis C. Norvell, Assistant City Attorney, for Respondent/Appellee City of Tallahassee.

PER CURIAM.

Petitioner/Appellant Dr. Erwin Jackson filed a petition for writ of mandamus in this Court seeking to compel the circuit court to hold the "immediate hearing" mandated by section 102.168(7), Florida Statutes (2016). We granted the petition by order and explained that an opinion would follow. The day after our order issued, the trial court held a hearing and entered a final order in favor of Respondent/Appellee Scott Maddox. Jackson immediately sought review of the order in this Court by a separate "emergency petition to invoke this court's constitutional-writs power." We treated the petition as a notice of appeal and, after receiving expedited briefing, entered another order vacating the trial court's final order and remanding for further proceedings. We now write to further explain our actions in both cases, which we have consolidated for purposes of this opinion.

I. Procedural History

Maddox was elected as a city commissioner for the City of Tallahassee on August 30, 2016. The Leon County Elections Canvassing Board certified his election on

September 6, Maddox was scheduled to assume office on November 21. However, on September 13, 2016, Jackson filed a challenge in the circuit court seeking to invalidate the Canvassing Board's certification of Scott Maddox's election. Jackson asserted that Maddox was ineligible for the office of city commissioner because he was not an elector of the City of Tallahassee. Jackson argued that because Maddox's legal residence was an expansive million-dollar estate he owns outside the city limits, not the property that he rents in a commercial district of downtown Tallahassee, he was not a city resident, and therefore, not eligible to hold the office of city commissioner.

The City of Tallahassee (the City) sought leave of the court and was permitted to intervene. Citing Subpart A, Section 13 of the City of Tallahassee's Charter (City Charter), which provides that "[t]he commission shall be the judge of the election and qualification of its own members subject to review by the courts," the City argued that the circuit court was not the proper forum to hear Jackson's election contest, rather the City Commission provided the exclusive forum for resolving Maddox's eligibility to hold office. The City and Maddox then moved to dismiss the complaint or, in the alternative, to stay proceedings to allow the City to conduct its own proceeding to determine Maddox's eligibility.

On October 27, the circuit court granted the City's motion to stay, and agreed with the City that the question of whether Maddox was eligible to hold the office of city commissioner was reserved to the City Commission. The circuit court ordered the City to address Maddox's eligibility for office in "a timely manner," directing it to submit, by 5:00 p.m. on November 22, a report on whether Maddox was a resident of the City at the time he took the oath of office on November 21. Thereafter, Jackson sought emergency mandamus relief in this Court to compel the circuit court to conduct an immediate hearing as required by section 102.168(7).

## II. Mandamus Proceeding

Jackson challenged Maddox's election pursuant to section 102.168(1), Florida Statutes (2016), which provides that "the certification of election or nomination of any person to office . . . may be contested in the circuit court . . . by any elector qualified to vote in the election related to such candidacy. . . ." Such a complaint must be filed within ten days after certification of the election results. § 102.168(2), Fla. Stat. (2016). Jackson filed a timely complaint, alleging one of the enumerated statutory grounds for contesting an election: "Ineligibility of the successful candidate for the nomination or office in dispute." § 102.168(3)(b), Fla. Stat. (2016).

To establish ineligibility of a candidate to hold office, "a pleading must aver, and proof must show, constitutional ineligibility—the failure to meet qualifications the constitution lays down." *Norman v. Ambler*, 46 So.3d 178, 184 (Fla. 2010). "In this case, the City is a municipality, and 'the paramount law of a municipality is its charter, (just as the state constitution is the charter of the State of Florida,) and gives the municipality all the powers it possesses. . . .'" *Burns v. Tondreau*, 139 So.3d 481, 484 (Fla. 3d DCA 2014) (quoting *City of Miami Beach v. Fleetwood Hotel, Inc.*, 261 So.2d 801, 803 (Fla.1972)). The City of Tallahassee's charter establishes the minimum requirements for eligibility to serve as a city commissioner in Subpart A, Section 9, which provides that the city commission shall consist of "five (5) electors of the city elected at large." All of the parties agree that an "elector" is a city resident. The contest of election statute further provides

that "[a]ny ... qualified elector ... presenting such a contest to a circuit judge is entitled to an immediate hearing." § 102.168(7), Fla. Stat. (2016). But rather than holding an immediate hearing to address Jackson's complaint that Maddox was not eligible to serve as a city commissioner, the trial court stayed the proceedings to allow the City Commission to first decide Maddox's eligibility to hold office. Thus, the question presented to this Court was whether Jackson had a clear legal right to an immediate hearing and whether the trial court had a clear legal duty to conduct an immediate hearing under the election contest statute in light of the City Charter provision providing for the City Commission to determine the qualifications of its members.

The City and Maddox argued that Jackson was not entitled to an immediate hearing because the City Charter established a "supplementary procedure" that operated in harmony with the Florida Elections Code and that designated the City Commission as the exclusive forum for the initial determination of the eligibility of a candidate to hold the office of city commissioner. The City and Maddox argued that the City Commission's determination would then be subject to certiorari review in circuit court. Jackson argued that he was entitled to an immediate hearing in circuit court to resolve his challenge.

Based on our review of the Florida Election Code and the City of Tallahassee's Charter, we hold that Jackson had a clear legal right to an immediate hearing under section 102.168, Florida Statutes, the trial court had a clear legal duty to conduct such hearing, and the trial court's stay of the statutory proceeding in favor of a proceeding before the City Commission was error.

The Legislature has expressly preempted to the state matters involving state and local elections, with a limited exception for municipal elections. § 97.0115, Fla. Stat. (2016) ("All matters set forth in chapters 97–105 are preempted to the state, except as otherwise specifically authorized by state or federal law. The conduct of municipal elections shall be governed by s. 100.3605."). Section 100.3605 provides:

The Florida Election Code, chapters 97–106, shall govern the conduct of a municipality's election in the absence of an applicable special act, charter, or ordinance provision. No charter or ordinance provision shall be adopted which conflicts with or exempts a municipality from any provision in the Florida Election Code that expressly applies to municipalities.

§ 100.3605(1), Fla. Stat. (2016). The City and Maddox argue that section 102.168 does not expressly apply to municipal elections, and in the alternative, that if it does apply, the City of Tallahassee's charter does not conflict with any provision of the Election Code. We reject these arguments for two reasons.

First, the election contest statute, section 102.168, expressly applies to municipal elections. The plain language of the statute provides that, with the exception of challenges to the election of a member of either house of the Legislature, all challenges to the election of any person to office may be brought in circuit court. § 102.168(1), Fla. Stat. (2016) ("*Except as provided in s. 102.171,* the certification of election or nomination of any person to office, or of the result on any question submitted by referendum, may be contested in the circuit court ... by any elector qualified to vote in the election related to such candidacy, or by any taxpayer, respectively.") (emphasis added). Further, by its express language, the statute applies to the election of local candidates. Section 102.168(4) provides that "[t]he canvassing

board responsible for canvassing the election is an indispensable party defendant in county and local elections."

▮ Second, the City of Tallahassee's charter provision providing for the City Commission to judge the qualifications of its own members either is not applicable to a challenge to a candidate's *eligibility* to hold office, or, if applicable, impermissibly conflicts with section 102.168(7)'s requirement that the circuit court hold an "immediate hearing" once an election challenge is filed. Contrary to the City's and Maddox's arguments, the City of Tallahassee's Charter contains no provision applicable to an election contest challenging the *eligibility* of a candidate for office. Rather, Section 13 states that the commission is the "judge of the election and *qualification* of its own members, subject to review by the courts." (emphasis added). Florida courts have long recognized the distinction between the eligibility of a candidate to hold office and the qualification of a candidate to stand for election to office. *See Norman,* 46 So.3d at 182. Eligibility "is determined solely by the constitutional requirement for holding the office sought." *Burns,* 139 So.3d at 484. Qualification refers to whether the constitutionally eligible candidate took the necessary steps to qualify to run for office. *Id.* Section 13 of the City Charter does not discuss the *eligibility* of a person to hold the office of city commissioner; rather, it discusses the *qualifications* of a commissioner. Because the City's charter is silent as to the process to be followed in the case of a challenge to the eligibility of a candidate to hold the office of city commissioner, the circuit court was required to follow the election contest procedures outlined in section 102.168, including the requirement to hold an immediate hearing.

▮ Despite the plain language of the City Charter, the City urges this Court to construe the language in Section 13 referring to the City Commission's review of a candidate's "qualifications" to hold office to encompass challenges to a candidate's eligibility to hold office. If we were to so construe the City Charter, we would hold that the charter provision improperly conflicts with section 102.168 by delaying the immediate hearing required by the statute. "The test of conflict between a local government enactment and state law is 'whether one must violate one provision in order to comply with the other. Putting it another way, a conflict exists when two legislative enactments "cannot co-exist." ' " *Sarasota All. for Fair Elections, Inc. v. Browning,* 28 So.3d 880, 888 (Fla.2010) (quoting *Laborers' Int'l Union of N. Am., Local 478 v. Burroughs,* 541 So.2d 1160, 1161 (Fla.1989)). Here, if the City Charter authorizes the City Commission to adjudicate a complaint challenging the eligibility of a candidate to hold the office of city commissioner, subject only to certiorari review in the circuit court, the process contemplated under the charter clearly frustrates the Legislature's intent in section 102.168(7) requiring an "immediate hearing" of an elections challenge in the circuit court. A hearing in the circuit court cannot be considered immediate if it must await the completion of an open-ended municipal process that, as conceded by the City below, has no standards or time parameters.

Because Jackson had a clear legal right to an immediate hearing pursuant to section 102.168 and no other available legal remedies, we concluded that he was entitled to mandamus relief. *See Plymel v. Moore,* 770 So.2d 242, 246 (Fla. 1st DCA 2000) ("One seeking a writ of mandamus must show that he has a clear legal right to the performance of a clear legal duty by a public officer, and that he has no other available legal remedies."). Because the

circuit court was the proper forum for resolving this elections challenge, the trial court had no discretion to stay the proceedings for the City Commission to conduct its own proceeding. *See Martinez v. State*, 44 So.3d 1219, 1221 (Fla. 1st DCA 2010) (granting petition for writ of mandamus to compel trial court to hold evidentiary hearing required under the "Stand Your Ground" statute). Because of the time constraints surrounding this challenge, mandamus was Jackson's only viable legal remedy. We therefore granted the petition for writ of mandamus.

### III. Appeal Proceeding

Our order granting Jackson's mandamus petition issued shortly before 5:00 p.m. on November 9, 2016. The following morning, Jackson requested a hearing in the circuit court for the purpose of addressing "several scheduling and discovery issues." A hearing was scheduled for 1:15 p.m. that day. Maddox and the City did not object to the matters Jackson noticed for the hearing nor did they indicate that any other issues should be addressed by the court. At the hearing, however, Maddox argued that the hearing should proceed as a final evidentiary hearing. Jackson objected on several grounds: (1) the hearing had not been properly noticed as a final evidentiary hearing; (2) his discovery requests remained pending; and (3) the trial court had not ruled on several pending motions. In response, Maddox argued that discovery was not available under section 102.168. The trial court agreed and proceeded with a final evidentiary hearing. Because Jackson lacked notice, he was not prepared to offer any exhibits or testimony to support his allegations of Maddox's eligibility to hold office. After hearing testimony from Maddox and Jackson, and accepting exhibits from Maddox, the trial court entered a final order in favor of Maddox. The court also appeared to enter a default judgment against the Leon County Elections Canvassing Board, which had not entered an appearance. Jackson sought review of the final order by an emergency petition, arguing that the hearing failed to comport with the requirements of due process. We treated Jackson's petition as a notice of appeal and, for the reasons that follow, vacated the trial court's final order in its entirety.

▮▮▮▮ First, the trial court abused its discretion by conducting the final evidentiary hearing without proper notice, violating Jackson's right to due process of law. We recognize that "specific parameters of the notice and the opportunity to be heard required by procedural due process are not evaluated by fixed rules of law." *Keys Citizens For Responsible Gov't, Inc. v. Fla. Keys Aqueduct Auth.*, 795 So.2d 940, 948 (Fla.2001). Nevertheless, "[p]rocedural due process requires both fair notice and a real opportunity to be heard." *Id.* (citing *Dep't of Law Enf't v. Real Prop.*, 588 So.2d 957, 960 (Fla.1991)). "The notice must be of such nature as reasonably to convey the required information...." *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).

▮▮▮▮ Here, Jackson requested a hearing to discuss scheduling and discovery issues in light of this Court's recent order granting his mandamus petition. In an email to opposing counsel, Jackson's counsel again set out his belief that the hearing should resolve outstanding motions relating to discovery and default, set a schedule for depositions, and determine a date for the final hearing. The notice of hearing did not specify that the hearing was to be the final evidentiary hearing, and it was not until the beginning of the hearing, after the trial court asked the parties if they had "talked about what we're doing today," that Maddox requested that the trial court

proceed with an evidentiary hearing. Thus, Jackson was blindsided and had no earlier indication of Maddox's intent to seek a final evidentiary hearing that day. Jackson objected, but the trial court proceeded with an evidentiary hearing. This deprived Jackson of the opportunity to subpoena witnesses and prepare for the final hearing. "[T]he opportunity to be heard at an evidentiary hearing requires time to secure the attendance of witnesses and to prepare for the presentation of evidence and argument." *Crepage v. City of Lauderhill*, 774 So.2d 61, 65 (Fla. 4th DCA 2000) (internal quotation and citation omitted). The trial court's decision to proceed with a final (and first) evidentiary hearing less than four hours after issuing an insufficient notice of hearing was a clear deprivation of due process and an abuse of discretion. *Dep't of Children & Families v. T.W.*, 124 So.3d 411, 411 (Fla. 5th DCA 2013) ("The lack of proper notice and the failure to conduct an evidentiary hearing where Petitioner had a fair opportunity to present evidence deprived Petitioner of its due process rights.").

■ Further, the trial court's conclusion that discovery was not available under section 102.168 was clear legal error. Although the statute is silent with regard to the availability of discovery, the Florida Rules of Civil Procedure apply to all special statutory proceedings in the circuit courts. Fla. R. Civ. P. 1.010. ed. cmt. ("By being applicable to all suits of a civil nature, the civil rules cover not only law and equity, tort and contract, but also special statutory proceeding under the various extraordinary writs which have been classified as civil in nature."). A review of reported decisions involving section 102.168 elections challenges reveals that discovery is routinely conducted under the supervision of a trial court in such cases. *See, e.g., Gore v. Harris*, 772 So.2d 1243,

1247 (Fla.2000) (noting that five days after an election contest was filed the trial court held a two-day evidentiary hearing), *rev'd on other grounds, Bush v. Gore*, 531 U.S. 98, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000); *Howanitz v. Blair*, 394 So.2d 479 (Fla. 3d DCA 1981) (finding trial court prematurely entered summary judgment in an election contest); *Spradley v. Bailey*, 292 So.2d 27, 28–29 (Fla. 1st DCA 1974) (noting that thirty-one witnesses testified at the evidentiary hearing in an election contest, both in person and by depositions); *Barber v. Moody*, 229 So.2d 284, 287 (Fla. 1st DCA 1969) (construing predecessor statute section 102.161, and noting that "[o]ur statute does not specifically require that the complaint state only those facts which are within the personal knowledge of the contestant"). In light of the time-sensitive nature of challenges brought under section 102.168, the trial court has broad discretion to control the scope and limitation of discovery. *Friedman v. Heart Inst. of Port St. Lucie, Inc.*, 863 So.2d 189, 194 (Fla.2003). Indeed, the plain language of the statute emphasizes the trial court's authority to limit the amount of testimony heard during the immediate hearing. § 102.168(7), Fla. Stat. (2016) ("[T]he court in its discretion may limit the time to be consumed in taking testimony, with a view therein to the circumstances of the matter and to the proximity of any succeeding election."). However, notwithstanding the trial court's broad discretion to govern discovery in this elections challenge, the trial court's decision here to block *all* discovery in this case was a clear abuse of discretion. *See Allstate Ins. v. Boecher*, 733 So.2d 993, 995 (Fla.1999) (holding the primary purpose of discovery is to prevent the use of legal gymnastics and to prevent trials from being carried on in the dark); *955 N.E. 125th St. Corp. v. Cty. Nat'l Bank*, 349 So.2d 758, 760–61 (Fla. 3d DCA 1977)

(holding due process of law requires an adequate opportunity for discovery).

■ Finally, the trial court abused its discretion and violated Jackson's due process rights by failing to address several pre-trial motions before issuing a final order. Though several of Jackson's discovery requests remained pending, the trial court improperly refused to address the outstanding discovery requests at the evidentiary hearing. *See Bldg. Educ. Corp. v. Ocean Bank,* 982 So.2d 37, 40 (Fla. 3d DCA 2008). Further, the trial court refused to address Jackson's argument that he was entitled to a judgment on the pleadings because Maddox failed to file an answer to the complaint within the statutorily required time period.

Based on the numerous violations of Jackson's due process rights, we vacated the trial court's final order and remanded for further proceedings in accordance with section 102.168, the Rules of Civil Procedure, and due process. We further directed the trial court to establish an expedited discovery schedule and to resolve unresolved discovery disputes, to rule on the outstanding motions, and, following discovery and proper notice to the parties, to conduct the hearing contemplated by section 102.168(7). Finally, we deferred to the trial court to hear argument from the parties and determine whether Maddox would be able to take the oath of office, and what effect if any that determination would have on Jackson's current cause of action.

## IV. Conclusion

In conclusion, we held that Jackson was entitled to mandamus relief because he had a clear legal right to an immediate hearing before the circuit court pursuant to section 102.168 to resolve his election contest and there were no other available legal remedies. After the trial court conducted a hearing and entered a final order, we vacated the trial court's order and remanded for further proceedings because the trial court denied due process by concluding that discovery was not available, by hearing the merits of Jackson's election contest without proper notice to the parties, by failing to resolve Jackson's pending discovery requests, and by failing to rule on a number of unresolved motions.

ROWE, MAKAR, and KELSEY, JJ., concur.