BENTON, J.
 

 After Jim Norman won the Republican primary for a state senate seat, his defeated opponent, Kevin Ambler, filed a lawsuit in Leon County,
 
 [1]
 
 alleging inaccuracies in financial disclosure forms Mr. Norman had filed to get on the ballot. In the order under review, the circuit court ruled him ineligible on that basis for nomination or election to the Florida Senate. We reverse the circuit court’s order, and dismiss Mr. Ambler’s cross-appeal (in which he contends he should be the Republican candidate in the general election) as moot.
 

 Both men filed qualifying papers to run as Republicans for the Florida Senate, District 12, and both appeared on the ballot for the August 24, 2010, primary. Mr. Norman won by a vote of 18,452 (55.95%) to 14,530 (44.05%). But Mr. Ambler filed in circuit court one week after the primary election. As amended, his complaint essentially alleged that Mr. Norman was ineligible because the “full and public disclosure of financial interests” form he filed with his qualifying papers failed to disclose assets obtained with a $500,000 gift one Ralph Hughes (now deceased) made to Mearline Norman, the candidate’s wife.
 

 The complaint invoked section 102.168(3)(b), Florida Statutes (2010), which states a ground for post-election challenges to elections. The statute authorizes challenges only on limited grounds.
 
 [2]
 
 As regards the primary elec
 
 *181
 
 tion, we are, of course, concerned with an election that has already taken place.
 
 [3]
 
 In relevant part, the statute provides that certification, whether of the election to or of the nomination for office, may be contested after the election, whether primary or general, as the case may be. As pertinent here, the statute provides that a nomination may be set aside based on the “[i]neligibility of the successful candidate for the nomination or office in dispute.”
 
 Id.
 

 After an expedited bench trial, the circuit court made findings of fact to the effect that the $500,000 gift to Mrs. Norman had been an “indirect” gift to Mr. Norman, and that the failure to make any mention of assets acquired with the money (albeit assets listed — at least for the most part — in his wife’s name) reflected an intent to deceive the public. The circuit court ruled that this omission constituted a substantial failure to comply with financial disclosure requirements; and concluded that Mr. Norman had “failed to properly qualify for nomination and election to the Florida Senate, District 12 and accordingly is ineligible for any nomination or election to the Florida Senate, District 12.”
 
 [4]
 
 On this basis, the circuit court rendered Mr. Norman’s primary victory a nullity, declared him “disqualified” as a candidate in the general election, and ordered him “removed from said ballot,” citing section 112.317(l)(c)l., Florida Statutes (2010).
 

 Courts must take care in post-election challenges to avoid disenfranchising voters without clear statutory warrant. “At common law, except for limited application of quo warranto, there was no right to contest in court any public election, because such a contest is political in nature and therefore outside the judicial power.”
 
 McPherson v. Flynn,
 
 397 So.2d 665, 667 (Fla.1981). In light of this history, the statutory right to bring an election contest after an election has taken place, which section 102.168 confers, should be construed in strict conformity with the language of the statute: “Generally, there is no inherent power in the courts of this state to determine election contests and the right to hold legislative office.”
 
 Id.
 

 Preliminarily, we reject Mr. Ambler’s argument that he was required to await the results of the election before bringing his challenge. The Commission
 
 *182
 
 on Ethics plainly had authority to act before the primary election and, at least once administrative remedies had been exhausted,
 
 [5]
 
 the courts could have ordered the filing officer to take any action the law required.
 
 See, e.g., State ex rel. Siegendorf v. Stone,
 
 266 So.2d 345 (Fla.1972) (denying mandamus seeking order requiring secretary of state to omit another candidate for county judge “from the certification of candidates duly qualified”);
 
 Browning v. Young,
 
 993 So.2d 64 (Fla. 1st DCA 2008) (affirming mandamus requiring secretary of state to accept legislative candidate’s financial disclosure form the secretary’s designee had rejected as technically defective);
 
 Marina v. Leahy,
 
 578 So.2d 382 (Fla. 3d DCA 1991) (affirming a trial court order deleting Marina’s name from the ballot in mayoral election). But here the (primary) election is over.
 

 The present case is not a judicial challenge to which the filing officer has been made a party, brought before any vote has been cast, to test the filing officer’s decision as to whether a candidate has successfully qualified to run for office.
 
 Cf. State ex rel. Siegendorf v. Stone, supra; Browning v. Young, supra; Schurr v. Sanchez-Gronlier,
 
 937 So.2d 1166 (Fla. 3d DCA 2006);
 
 Smith v. Crawford,
 
 645 So.2d 513 (Fla. 1st DCA 1994);
 
 Marina v. Leahy, supra.
 
 At issue here is whether the facts found below
 
 [6]
 
 establish the “[ijneligi-bility of the successful candidate for the nomination ... in dispute.” § 102.168(3)(b), Fla. Stat. (2010).
 

 The law distinguishes between a candidate’s constitutional eligibility for office, on the one hand, and, on the other, a constitutionally eligible candidate’s taking the necessary, statutory steps to qualify to run for office.
 
 [7]
 
 The Fourth District discussed the distinction in
 
 Levey v. Dijols,
 
 990 So.2d 688 (Fla. 4th DCA 2008), pointing out that “eligibility” for state office is determined solely by the constitutional requirements for holding the state office sought. The constitutional requirements pertinent here are set forth in Article III, section 15 of the Florida Constitution,
 
 [8]
 
 
 *183
 
 which establishes as the only criteria
 
 [9]
 
 for state senators (and other legislators) that they be at least twenty-one years of age and have resided in the state for a period of two years prior to the election; and that each be an elector in and resident of the district from which elected at the time office is assumed.
 
 See Miller v. Mendez,
 
 804 So.2d 1243 (Fla.2001). Mr. Norman meets these criteria.
 

 As far as the record reveals, he has not been “convicted of a felony, or adjudicated in this or any other state to be mentally incompetent,” Art. VI, § 4(a), Fla. Const., nor served any prior term as a state senator. He is therefore constitutionally eligible to hold office as a state senator, and so to serve as his party’s nominee for that office, whatever irregularities may have transpired in the course of his qualifying to run for office. Article VI, section 4, provides the only “disqualification” applicable across the board to candidates for offices authorized elsewhere in the constitution.
 
 See Cook v. City of Jacksonville,
 
 823 So.2d 86 (Fla.2002). Article II, section 8, contains no comparable provision.
 

 The adoption of the disclosure requirements in Article II, section 8, did not modify Article III, section 15’s eligibility requirements. Unless a later constitutional amendment expressly modifies an existing constitutional provision, the old and the new must both be given effect. Both should operate as written, unless the clear intent of the later provision would thereby be defeated.
 
 See Jackson v. Consol. Gov’t of City of Jacksonville,
 
 225 So.2d 497, 500-01 (Fla.1969). Article II, section 8, expresses no intent to modify the pre-exist-ing provisions of Article III, section 15, nor is the intent of Article II, section 8, defeated by failing to construe Article II, section 8, as displacing Article III, section 15. Both are integral parts of the Constitution which can be given full effect.
 

 No statute can add to or take from the qualifications for office set forth in the Constitution, the constitutional criteria that determine eligibility within the meaning of section 102.168(3)(b), Florida Statutes (2010).
 
 See Miller,
 
 804 So.2d at 1246;
 
 State v. Grassi,
 
 532 So.2d 1055, 1056 (Fla.1988). Statutory provisions governing financial disclosure (or other aspects of qualifying to run for office) cannot impose additional eligibility requirements beyond those set forth in the constitution.
 
 Id.
 

 That grounds for an election challenge under section 102.168 have not been stated does not mean no remedy is available if a candidate falsifies financial disclosure forms. Putting to one side the possibility of criminal prosecution for perjury, the Legislature has the constitutional power to judge the qualifications, elections, and returns of its members, and to refuse to seat a member; or to remove a member, notably on recommendation of the Commission on Ethics. Part III of Chapter 112, Florida Statutes, implementing Article II, section 8, sets forth detailed procedures under which the Commission on Ethics is empowered to receive and investigate complaints of violations of the constitutional and statutory financial disclosure provisions and to report its findings to the
 
 *184
 
 “proper disciplinary official or body,”
 
 [10]
 
 which shall have the “power to invoke the penalty provisions of this part, including the power to order the appropriate elections official to remove a candidate from the ballot.”
 
 See
 
 § 112.324(8), Fla. Stat. (2010).
 

 But, because Mr. Ambler’s complaint does not allege, and the evidence did not establish, adequate grounds under section 102.168(3)(b), the circuit court’s decision must be reversed. To establish “[Un-eligibility of the successful candidate for the nomination or office in dispute,” § 102.168(3)(b), Fla. Stat. (2010), a pleading must aver, and proof must show, constitutional ineligibility — the failure to meet qualifications the constitution lays down. Even a false filing made in the process of qualifying to run for office might be cured if timely asserted. Had the Legislature intended an error or omission in a candidate’s financial disclosure documents to be a basis for a post-election contest under section 102.168, it could easily have said so. We must respect the legislative choice its silence on the point reflects.
 

 The final order and the order amending final order are reversed, and the case is remanded, with directions to dismiss Mr. Ambler’s complaint. The mandate shall issue forthwith, and no motion for rehearing shall be entertained.
 

 PADOVANO and CLARK, JJ., concur.
 

 [1]
 

 . Venue was properly laid in Leon County because the contested election took place in a senate district encompassing portions of Hillsborough and Pasco Counties.
 
 See
 
 § 102.1685, Fla. Stat. (2010).
 

 [2]
 

 . Section 102.168, Florida Statutes (2010), provides:
 

 (3) The complaint shall set forth the grounds on which the contestant intends to establish his or her right to such office or set aside the result of the election on a submitted referendum. The grounds for contesting an election under this section are:
 

 
 *181
 
 (a) Misconduct, fraud, or corruption on the part of any election official or any member of the canvassing board sufficient to change or place in doubt the result of the election.
 

 (b) Ineligibility of the successful candidate for the nomination or office in dispute.
 

 (c) Receipt of a number of illegal votes or rejection of a number of legal votes sufficient to change or place in doubt the result of the election.
 

 (d) Proof that any elector, election official, or canvassing board member was given or offered a bribe or reward in money, property, or any other thing of value for the purpose of procuring the successful candidate’s nomination or election or determining the result on any question submitted by referendum.
 

 [3]
 

 . Mr. Ambler’s theory is that, in legal contemplation, Mr. Norman was never on the ballot because he falsified a financial disclosure form; that the only candidate ever lawfully on the ballot was Mr. Ambler, and that, as the only eligible and qualified candidate in the primary election, Mr. Ambler must be deemed the party's nominee in the general election (where voting for any other candidate required writing the candidate’s name in).
 

 [4]
 

 . The testimony at trial revealed that Ambler had been aware of the existence of the assets in question for several years; and that, when he reviewed Norman’s financial disclosure form shortly after it was filed in June, he noted that the assets had not been disclosed. He admitted that he learned who had given Mrs. Norman the money before the election. Rather than acting at that time, he waited until after his defeat in the August 24 primary . to file his complaint in circuit court.
 

 [5]
 

 . As a general proposition, the doctrine of exhaustion of administrative remedies precludes judicial intervention where available administrative remedies can afford the relief a litigant seeks. See
 
 Fla. Fish & Wildlife Conservation Comm’n v. Pringle,
 
 838 So.2d 648 (Fla. 1st DCA 2003);
 
 Fla. Marine Fisheries Comm'n (Div. of Law Enforcement) v. Pringle,
 
 736 So.2d 17, 21 (Fla. 1st DCA 1999) (that agency "is charged with implementing not only statutory provisions, but also ... constitutional provisions ... does not ... justify expansion of ... limited role assigned the judiciary” by the exhaustion doctrine). Before the circuit court, Mr. Ambler acknowledged the existence of an administrative remedy with the Commission on Ethics, but argued that the close proximity of the November general election meant the remedy would be ineffective, justifying judicial intervention. We are not persuaded to this position, but need not tarry over the point, given our disposition of the case on other grounds.
 

 [6]
 

 . It is fundamental that the factual conclusions of the trial court are presumed correct and the burden is upon the appellant to demonstrate reversible error.
 
 Applegate v. Barnett Bank of Tallahassee,
 
 377 So.2d 1150 (Fla.1979);
 
 Kates v. Millheiser,
 
 569 So.2d 1357 (Fla. 3d DCA 1990);
 
 Grossman v. See Air Towers,
 
 513 So.2d 686 (Fla. 3d DCA 1987)
 
 review denied
 
 520 So.2d 584 (Fla.1988);
 
 Department of Transportation v. Morehouse,
 
 350 So.2d 529 (Fla. 3d DCA 1977),
 
 cert. denied,
 
 358 So.2d 129 (Fla.1978).
 

 Marina v. Leahy,
 
 578 So.2d 382, 384 (Fla. 3d DCA 1991).
 

 [7]
 

 . This is not to say that the language in judicial opinions always observes the distinction with crystal clarity.
 
 See, e.g., Holley v. Adams,
 
 238 So.2d 401 (Fla.1970). Further confusing matters, the Florida Constitution refers to eligibility requirements it lays down for holding office as "qualifications.”
 

 [8]
 

 .
 
 “Qualifications.
 
 Each legislator shall be at least twenty-one years of age, an elector and resident of the district from which elected and
 
 *183
 
 shall have resided in the state for a period of two years prior to election.” Art. Ill, § 15(c), Fla. Const.
 

 [9]
 

 . While the requirement that legislative candidates file full and public disclosure of their financial interests has a basis in the constitution, Article II, section 8 contains no disqualification or ineligibility provision, and contemplates implementing legislation.
 

 [10]
 

 . In the case of a candidate for the Florida Legislature, the "proper disciplinary official or body” is the Governor.
 
 See
 
 § 112.324(8)(d), Fla. Stat. (2010). After election, the power resides in the appropriate legislative chamber.
 
 See McPherson v. Flynn,
 
 397 So.2d 665, 667 (Fla.1981).