LAGOA, J.
Appellant, Kevin Burns (“Burns”) appeals from an order granting Appellee, Lucie Tondreau’s (“Tondreau”) Motion to Dismiss for lack of subject-matter jurisdiction. We affirm in part and reverse in part. We affirm the trial court’s order to the extent that Burns alleges that Ton-dreau failed to properly qualify to run for the office of mayor, as those types of challenges must be brought pre-election. Pursuant to section 102.168(3)(b), Florida Statutes (2012), however, Burns is not barred from bringing a post-election challenge to Tondreau’s eligibility to hold the office as *483 set forth in Article II, Section 5 of the City of North Miami’s Charter (“City Charter”). Accordingly, we reverse and remand for Burns to pursue the permitted post-election eligibility challenge.
I. FACTUAL AND PROCEDURAL HISTORY
Burns and Tondreau, along with five other candidates, ran for the office of may- or for the City of North Miami (“City”). The general election was held on May 4, 2013. As a result of initial election results, a run-off was held between Burns and Tondreau. On June 7, 2013, Tondreau prevailed with 55.71% of the vote,[1] was certified the winner, and was sworn in on June 11, 2013.
On June 17, 2013, Burns filed suit in circuit court seeking a declaratory judgment pursuant to sections 86.021 and 102.168, Florida Statutes (2012). Subsequently, Burns filed an Amended Complaint that also sought a judgment of ouster if the trial court determined Tondreau had not qualified to run for mayor. In the Amended Complaint, Burns alleged that Tondreau failed to file the documentation required by Article IV, Section 6-78(b)(2) of the North Miami Municipal Election Code (“City Code”).[2] Specifically, Burns alleged that Tondreau failed to provide one of the following required documents: residential lease, voter’s registration card, driver’s license, property tax receipt, homestead exemption, or proof of utility service. Burns further alleged that Ton-dreau had not continuously resided in the City for at least one year prior to qualifying. As Tondreau filed her candidate packet on April 8, 2013, Burns alleged that she was required to establish that her residency within the City began on April 8, 2012 (or earlier) and continued through April 8, 2013.
On July 9, 2013, Burns moved for summary judgment based solely on Tondreau’s alleged failure to comply with the requirements of Section 6-78(b)(2) of the City Code, arguing that Tondreau’s application package was legally insufficient to qualify her as a candidate for mayor.
Tondreau answered the Amended Complaint, filed a Motion to Dismiss, and responded to Burn’s Motion for Summary Judgment.
After briefing by both parties, the trial court entered an order granting Ton-dreau’s Motion to Dismiss. In its written order, the trial court cited to McPherson v. Flynn, 397 So.2d 665 (Fla.1981), and found that “[g]enerally, courts have no inherent power to determine election contests nor do courts have jurisdiction to inquire into a person’s qualification to run for office after that person has been duly elected.” (Emphasis in original). Additionally, the trial court ruled that Burns’s *484 Motion for Summary Judgment was rendered moot in light of the order granting dismissal. This appeal followed.
II. ANALYSIS
“[E]xtreme care must be given to post-election challenges to avoid disenfranchising Florida’s voters.” Levey v. Dijols, 990 So.2d 688, 692 (Fla. 4th DCA 2008). Indeed, “barring fraud, unfairness, disfranchisement of voters, etc., it is too late to attack the validity of an election after the people have voted.” Baker v. State ex rel. Caldwell, 122 So.2d 816, 826 (Fla. 2d DCA 1960).
In this case, the Amended Complaint commingles the statutory requirements of Tondreau to qualify to run for mayor with the constitutional eligibility requirement needed for Tondreau to be eligible to hold office. Because this is a post-election challenge, and section 102.168 authorizes post-election challenges only on limited enumerated grounds, the distinction between a candidate’s required steps to qualify to run for office and a candidate’s constitutional eligibility to hold office is significant and merits discussion.
“The law distinguishes between a candidate’s constitutional eligibility for office, on the one hand, and, on the other, a constitutionally eligible candidate’s taking the necessary, statutory steps to qualify to run for office.” Norman v. Ambler, 46 So.3d 178, 182 (Fla. 1st DCA 2010). The eligibility for office is determined solely by the constitutional requirement for holding the office sought. See Levey, 990 So.2d at 688 . “To establish ‘[i]neligibility of the successful candidate for the nomination or office in dispute,’ § 102.168(3)(b), Fla. Stat. (2010), a pleading must aver, and proof must show, constitutional ineligibility — the failure to meet qualifications the constitution lays down.” Norman, 46 So.3d at 184.
In this case, the City is a municipality, and “the paramount law of a municipality is its charter, (just as the State Constitution is the charter of the State of Florida,) and gives the municipality all the powers it possesses.... ” City of Miami Beach v. Fleetwood Hotel, Inc., 261 So.2d 801, 803 (Fla.1972). As discussed below, Article II, section 5 of the City’s Charter establishes a person’s eligibility to serve as mayor.
The main thrust of Burns’s Amended Complaint, however, stems from the allegation that Tondreau failed to produce proper documentation as required by Section 6 — 78(b)(2) of the City Code to qualify to run for mayor. Specifically, Burns alleged that Tondreau failed to produce “voter’s registration, driver’s license, property tax receipt, homestead exemption, utility bills or lease agreement; all of which must have been in effect for at least one (1) year prior to qualifying.” These allegations, however, only pertain to whether Ton-dreau met the qualification requirements to run for office, not Tondreau’s eligibility to hold office. Because qualification issues cannot be raised after an election has been held, we will address the parties’ arguments involving pre-election and post-election challenges to whether a candidate has qualified to run for office.
A. PRE-ELECTION AND POST-ELECTION CHALLENGES TO QUALIFICATIONS
In granting Tondreau’s Motion to Dismiss, the trial court relied upon the Florida Supreme Court’s case of McPherson v. Flynn, 397 So.2d 665 (Fla.1981). In McPherson, the Florida Supreme Court concluded that the losing candidate for a seat in the Florida Legislature could not, post-election, unseat the winning candidate based on a false candidate oath that the winning candidate filed during the qualifications period. Significantly, the Court stated:
Since there is no common law right to contest elections, any statutory grant *485 must necessarily be construed to grant only such rights as are explicitly set out. The statutory election contest has been interpreted as referring only to consideration of the balloting and counting process. The balloting process is distinct from the legal qualifications of the candidates, and we can find no authority for extending an election contest to areas outside the balloting process.
Id. at 668 (citations omitted).
Burns attempts to distinguish McPherson, claiming that case involved the interpretation of section 102.168 in the context of an election for state office, whereas here, the contest involves election for city office. Burns argues that McPherson is distinguishable because it involved requirements imposed by the State’s constitution, as distinct from requirements imposed by a city’s charter or ordinance. Burns misapprehends the crux of McPherson, as it is grounded in the doctrine of separation of powers and in the strict construction of section 102.168 — neither of which distinguishes between state and city offices.
Additionally, in support of his position that the trial court had jurisdiction to hear his qualifications challenge, Burns relies on this Court’s opinion in Marina v. Leahy, 578 So.2d 382 (Fla. 3d DCA 1991). We find this argument unpersuasive. In Marina, approximately one and a half months before the election, the supervisor of elections received a sworn affidavit from an elector challenging Marina’s residency to run for the position of mayor of the City of Sweetwater. The trial court disqualified Marina, and this Court affirmed, stating, in part:
The Sweetwater Code establishes a residency requirement as a condition precedent to a candidate’s name being placed on the ballot. Reasonable residency requirements as a qualification for candidacy to public office are a valid means of regulating the election of public officials. Marina failed to meet the requirement of establishing residence in the city six months prior to the qualifying date and, thus, was not a qualified candidate.
Marina, 578 So.2d at 384-85 (citations omitted). In Marina, the election had not yet taken place. Here, the election was over, and Tondreau had been declared the winner, certified, and sworn in.
To the extent Burns’s Amended Complaint and his Motion for Summary Judgment are based on whether Tondreau properly met the qualification requirements necessary to run for office of mayor prior to the election, the trial court correctly found that: “[generally, courts have no inherent power to determine election contests nor do courts have jurisdiction to inquire into a person’s qualification to run for office after that person has been duly elected.” Accordingly, we affirm the trial court’s order granting the dismissal based on the Amended Complaint’s allegations challenging, post-election, whether Ton-dreau met the qualification requirements necessary to run for the office of mayor. The time to have challenged Tondreau’s qualifications to run for office was prior to the election, not after.[3]
B. POST-ELECTION CHALLENGES REGARDING CONSTITUTIONAL ELIGIBILITY OF SUCCESSFUL CANDIDATE
We now turn to the question of when a post-election challenge is permit *486 ted. Because “there is no common law right to contest elections, any statutory grant must necessarily be construed to grant only such rights as are explicitly set out.” McPherson, 397 So.2d at 668. “[T]he statutory right to bring an election contest after an election has taken place, which section 102.168 confers, should be construed in strict conformity with the language of the statute.” Norman, 46 So.3d at 181.
In 1999, the Florida Legislature amended section 102.168 to allow for post-election challenges based on the successful candidate’s ineligibility for the nomination or office in dispute. Specifically, section 102.168(3)(b) states as follows:
(3) The complaint shall set forth the grounds on which the contestant intends to establish his or her right to such office or set aside the result of the election on a submitted referendum. The grounds for contesting an election under this section are:
[[Image here]]
(b) Ineligibility of the successful candidate for the nomination or office in dispute.
(emphasis added).
In his Amended Complaint, Burns seeks relief pursuant to section 102.168.[4] At issue here is the “[ijneligibility of the successful candidate [Tondreau] for the ... office in dispute.” § 102.168(3)(b), Fla. Stat. (2012). As discussed above, Burns’s Amended Complaint mainly challenges whether Tondreau met the qualification requirements necessary to run for the office of mayor,[5] but it also alleges her ineligibility to hold the office, in that Burns alleges that Tondreau had not continuously resided in the City for at least one year prior to qualifying, an eligibility requirement under Article II, section 5 of the City Charter. As discussed supra, the law “distinguishes between a candidate’s constitutional eligibility for office, on the one hand, and, on the other, a constitutionally eligible candidate’s taking the necessary, statutory steps to qualify to run for office.” Norman, 46 So.3d at 182.
The Charter provision at issue is Article II, Section 5 of the City Charter, which defines a person’s “eligibility” to serve as mayor.[6] Article II, Section 5(3), solely requires that the mayor “be a continuous resident of the City for one year prior to the time of qualification and thereafter.”
The City Charter’s eligibility requirement to serve as mayor of the City is different than the requirements for a candidate to qualify to run for the office of mayor contained in both the City Charter and the City Code. Article XVI, Section *487 167, of the City Charter[7] establishes the procedural requirements for qualifying to run as a candidate and, as previously discussed, Section 6-78(b)(2) of the City Code requires a sworn affidavit and one required document establishing proof of residency.
Burns argues that Section 6-78(b)(2) of the City Code adds additional eligibility requirements, including the requirement to file particular documents that provide proof of residency for at least one year prior to qualifying. Tondreau asserts that treating this requirement as a condition of eligibility is improper as it would add to the constitutional eligibility requirements set out in the City Charter. We agree. The qualification requirements in the City Code for running for office cannot impose additional eligibility requirements beyond those set forth in the City Charter, as the Charter sets forth the constitutional eligibility requirements for holding the office at issue. If the City Charter imposed eligibility requirements for the office of mayor in addition to those set forth in Article II, Section 5, it would have so stated. Significantly, we note that while not applicable to the office of mayor, in the City’s May 14, 2013 election, the residents of North Miami approved a Charter amendment, which expressly added to the eligibility requirement for a candidate for the City Council. The Charter amendment approved by the City’s residents now requires that a candidate for City Council submit a Florida government issued identification with one type of proof of residency showing that the candidate has continuously resided in the district for which the candidate is seeking election for a period of one year prior to the time of qualification and thereafter.
In its written order, the trial court concluded that section 102.168 did not create jurisdiction for the court to entertain the post-election challenge. The trial court found “that the McPherson case makes it clear that any statutory right to contest an election pursuant to §§ 102.168 and 102.1682 is limited only to ‘consideration of the balloting and counting process.’ McPherson, 397 So.2d at 667. (“We can therefore find no right ... to attack the ... residency qualifications [of a candidate] under statutory sections [102.168 and 102.1682] providing for contest of elec *488 tions.”).”[8]
Section 102.168(3)(b), however, expressly authorizes post-election challenges involving the eligibility of a successful candidate for the office in dispute. As we must strictly construe the statutory grant required by section 102.168(3)(b), we find that the trial court erred in concluding that it lacked subject matter jurisdiction to hear a post-election challenge to determine whether Tondreau met the eligibility requirement for the office in dispute, i.e., whether Tondreau was “a continuous resident of the City for one year prior to the time of qualification and thereafter.”
III. CONCLUSION
For the reasons stated, we affirm the trial court’s order dismissing Burns’s Amended Complaint for lack of subject matter jurisdiction with regard to any allegations involving Tondreau’s qualifications to run for office, as this type of post-election challenge is not permitted.
Because the Amended Complaint also sought relief pursuant to section 102.168(3)(b), Florida Statutes (2012), which does permit post-election challenges to the eligibility of the successful candidate for the office in dispute, we reverse and remand for Burns to file an amended complaint that challenges only Tondreau’s alleged ineligibility for the office of mayor, i.e., whether Tondreau failed to meet the City Charter’s requirement that she be “a continuous resident of the City for one year prior to the time of qualification and thereafter.” We express no opinion as to the legal sufficiency of any amended complaint or the merits of the parties’ claims and defenses at this stage of the case.
AFFIRMED IN PART; REVERSED IN PART WITH INSTRUCTIONS.

. Burns received 44.29% of the vote.

. Section 6-78(b) of the City Code provides in pertinent part:
(b) Any person seeking the office of mayor or councilperson must be a resident of the city and/or the respective district of North Miami for at least one (1) year prior to qualifying for office.
(1) All candidates shall submit a sworn affidavit at the time of qualifying that provides their current address of legal residence and affirms that they have met the residency requirements pursuant to this section. The affidavit shall be on a form provided by the city clerk acting as the supervisor of elections.
(2) In addition to filing the affidavit, candidates shall submit proof of residency which shall include one (1) of the following documents: voter’s registration, driver's license, property tax receipt, homestead exemption, utility bill or lease agreement; all of which must have been in effect for at least one (1) year prior to qualifying.

. We reject Burns’s argument that he was not required to bring his action challenging Ton-dreau’s qualifications to run for mayor before the election. Burns asserts that it would have been "political suicide” to file a challenge before Tondreau was elected to office as it "may have alienated some of his constituents.” The law, however, requires that suit be brought before the election if the plaintiff challenges whether a candidate has success *486 fully qualified to run. As evidenced by the Marina case, the supervisor of elections had the authority to act before the election and, at least once administrative remedies had been exhausted, the court, as in Marina, could have ordered the filing officer to take any action required by law.

.Although not an issue in this case, we note that section 102.168(2) requires a complaint to be filed "within 10 days after midnight of the date the last board responsible for certifying the results officially certifies the results of the election being contested.” The vote was certified on June 7, 2013 and Burns filed his complaint on June 17, 2013. As such, the post-election challenge was timely. •

. Burns's motion for summary judgment was based solely on Tondreau's alleged failure to comply with the qualification requirements necessary to run for office.

. Following the adoption of a Charter amendment in 2013, the City Charter has since been renumbered.

. Article XVI, Section 167, provides as follows:
Sec. 167. Qualification of candidates.
(a) Any qualified elector, as described in Article II, Section 5 above, of the city may qualify and run for a single council district seat, for mayor, or for city clerk by filing such intention in writing with the city election authorities not earlier than forty-three (43) days nor later than thirty-five (35) days before the election, such intention to be in substantially the following form:
(b) I, the undersigned, an elector of the City of North Miami, whose residence is _ hereby announce my candidacy for the office of (Councilperson, District No. _ (for Mayor), (for City Clerk) to be voted for at the election to be held on the day of_20,_ and I hereby agree to serve if elected.
Signature of candidate_
Date and hour filing_
Received by_
(signature of election official)
(c)No intention or announcement of candidacy shall be accepted by the election authorities unless accompanied by a qualifying fee to be paid by the candidate in the sum of five (5) percent of the yearly salary which a councilperson is then entitled to receive. The officer who receives the qualifying fee shall issue a receipt. Such qualifying fee shall be returned to the candidate if the candidate becomes ineligible or withdraws such candidacy not later than the close of qualifying. Any candidate may withdraw such candidacy not later than the last day for filing same by filing a notice of withdrawal with the city clerk.

. We affirm, however, the trial court’s ruling that Section 6 — 78(b)(2) of the City Code, "which details the minimum qualifications any person seeking to run for the office of mayor must satisfy prior to the election” did "not provide jurisdiction to [the] court, once a candidate is elected into office.”