# Third District Court of Appeal

## State of Florida

Opinion filed May 2, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D18-220
Lower Tribunal No. 17-26678

_____


**Alfonso "Alfie" Leon,**
Appellant,

vs.

**Joe Carollo, et al.,**
Appellees.



An Appeal from the Circuit Court for Miami-Dade County, Thomas J. Rebull, Judge.

KYMP, LLP, Juan-Carlos "J.C." Planas and Matthew S. Sarelson, for appellant.

Victoria Méndez, City Attorney and Forrest L. Andrews, Assistant City Attorney; Kuehne Davis Law, P.A., Benedict P. Kuehne and Michael T. Davis; Tania Cruz, P.A. and Tania Cruz Gimenez; Greenspoon Marder, P.A. and Joseph S. Geller (Fort Lauderdale); Coffey Burlington and Kendall Coffey, for appellees.

Before, ROTHENBERG, C.J., and SCALES and LUCK, JJ.


LUCK, J.

As a general rule, Florida courts have no inherent power to determine an election contest after a candidate has been elected. The legislature created a narrow exception to the no-inherent-power rule for post-election challenges where the successful candidate is ineligible for the nomination or office in dispute. The issue in this case is whether the requirement in the Miami city charter that a city commission candidate reside in the district at least one year before the qualifying date is an eligibility requirement, and therefore, within the narrow exception created by the legislature. Because we conclude that it is not, the courts have no inherent power to determine this post-election contest based on Miami's one-year-residency requirement for city commission candidates, and the case was properly dismissed by the trial court.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On November 21, 2017, Joe Carollo won a run-off election against Alfonso "Alfie" Leon for the district three seat on the Miami city commission. The results were certified on November 27, and eight days later, Leon filed an emergency amended verified complaint contesting the election under Florida Statutes section 102.168(3)(b).

The complaint alleged that Miami city charter section 4(c) required commission candidates to reside in the district at least one year prior to qualifying for election. Carollo, Leon's complaint alleged, did not reside in district three

2

within one year of the September 23, 2017 qualifying deadline for the commission election. Leon sought a judgment overturning the election because Carollo was ineligible to serve as the district three commissioner, and an order to rescind the certification of Carollo as the winner of the November 21 election.

The trial court held a four-day bench trial in January 2018. At the end of it, and after post-trial briefing, the trial court dismissed the lawsuit as an unauthorized and improper post-election challenge under section 102.68(3)(b) because the one-year-residency requirement was not an eligibility requirement to hold office. The trial court also concluded, on the merits, that Carollo had proven he resided in district three at least one year before qualifying for election.

Leon appeals both rulings. We do not address the merits of Leon's residency challenge because we agree with the trial court that the lawsuit was due to be dismissed as an unauthorized post-election challenge to Carollo's qualifications to run for office.[1]

**DISCUSSION**

While at common law there was no right to a post-election challenge, the legislature added section 102.168(3)(b) to allow a post-election challenge based on the "[i]neligibility of the successful candidate for nomination or office in dispute."[2]

---

[1] Because we are not reaching the merits of Leon's claim, we do not address the arguments in the parties' briefs about the sufficiency of the evidence, the statute of limitations, unclean hands, and laches.

[2] There are three other grounds for post-election challenges,

3

§ 102.168(3)(b), Fla. Stat. (2017); see also Burns v. Tondreau, 139 So. 3d 481, 485 (Fla. 3d DCA 2014) ("Because 'there is no common law right to contest elections, any statutory grant must necessarily be construed to grant only such rights as are explicitly set out. . . . In 1999, the Florida Legislature amended section 102.168 to allow for post-election challenges based on the successful candidate's ineligibility for the nomination or office in dispute." (quoting McPherson v. Flynn, 397 So. 2d 665, 668 (Fla. 1981))). In Burns, we explained what section 102.168(3)(b) means by a successful candidate's "ineligibility" for office.

Section 102.168(3)(b) ineligibility, we concluded in Burns, refers to "constitutional ineligibility" – "the constitutional requirement for holding the office sought." Burns, 139 So. 3d at 484. Section 102.168(3)(b) allows a post-election challenge to "a candidate's constitutional eligibility to hold office." Id.

---

(a) Misconduct, fraud, or corruption on the part of any election official or any member of the canvassing board sufficient to change or place in doubt the result of the election. . . .
(c) Receipt of a number of illegal votes or rejection of a number of legal votes sufficient to change or place in doubt the result of the election.
(d) Proof that any elector, election official, or canvassing board member was given or offered a bribe or reward in money, property, or any other thing of value for the purpose of procuring the successful candidate's nomination or election or determining the result on any question submitted by referendum.

§ 102.168(3)(a), (c)-(d), Fla. Stat. (2017), but Leon has not raised these other grounds and they are not at issue in this appeal.

For municipal candidates, like the Miami district three commissioner, we look to the city's constitution – its charter – for the eligibility requirements to hold office. See id. ("[T]he City is a municipality, and the paramount law of a municipality is its charter . . . . [Thus], the City's Charter establishes a person's eligibility to serve as mayor." (quotation omitted)); see also id. at 487 ("[T]he Charter sets forth the constitutional eligibility requirements for holding the office at issue.").

The Burns court was careful to distinguish "constitutional eligibility" from qualification requirements, i.e., the "candidate's required steps to qualify to run for office." Id. Section 102.168(3)(b), we explained, does not allow post-election challenges to "the necessary, statutory steps" taken by the candidate "to qualify to run for office." Id. "[Q]ualification issues," we said, "cannot be raised after an election has been held." Id. Therefore, any post-election challenge to a candidate's qualifications to run for office is not authorized by section 102.168(3)(b).

When faced, as here, with a section 102.168(3)(b) post-election challenge to election results, we are left with this question: does it challenge whether the winning candidate met the eligibility requirements in the constitution or charter for holding office; or does it challenge whether the winning candidate took the required steps to qualify to run for office. If the challenge is to the winning candidate's failure to meet the municipality's eligibility requirements for holding

5

office, than it is a proper section 102.168(3)(b) attack on the candidate's "ineligibility." If the challenge is to the winning candidate's qualifications to run for office (the failure to meet one of the necessary, statutory steps to qualify to run for office), then it is an improper post-election challenge, and must be dismissed.

Leon contends that the requirement in section 4(c) of the Miami charter that commission candidates reside in the district "at least one (1) year before qualifying" is an eligibility requirement for holding office in the city of Miami, and Carollo did not live in district three for at least one year before he qualified for the election. We disagree with Leon, and agree with the trial court in its thorough and well-reasoned ruling that the requirement in section 4(c) that a commission candidate reside in the district at least one year before qualifying was a required step to qualify to run for office, rather than a "constitutional eligibility" requirement to hold office, and therefore, the court had no inherent power to hear Leon's section 102.168(3)(b) post-election challenge.

<u>The plain language of Miami charter section 4(c)</u>

We start with the best evidence of whether section 4(c) is an eligibility requirement to hold office or a qualification requirement to run for office – its text:

> *Qualifications of mayor and city commission; mayor, city commissioners, and other officers and employees not to be interested in contracts, etc.; franks, free tickets, passes or service.* Candidates for mayor shall be residents of the city for at least one (1) year prior to qualifying and shall be electors therein. Further, candidates for the city commission shall have resided within the district at least one (1)

6

year before qualifying and be electors in the district, and shall maintain residence in that district for the duration of their term of office. The mayor, city commissioners, and other officers and employees shall not be interested in the profits and emoluments of any contract, job, work or service for the municipality. The mayor or any city commissioner who shall cease to possess any of the qualifications herein required shall forthwith forfeit his or her office, and any such contract in which any member is or may become interested may be declared void by the city commission.

Section 4(c) provides that the one-year-residency requirement applies to "candidates for the city commission." By its own terms, the one-year-residency requirement is imposed on "candidates." There is no similar requirement for sitting "city commissioners."

The framers of the charter knew how to distinguish between requirements for "city commissioners" and those for "candidates," and did so in section 4(c). In the very next sentence after the one-year-residency requirement, the charter imposes on "city commissioners" the requirement that they "not be interested in the profits or emoluments of any contract, job, work, or service for the municipality." Not "candidates," but "city commissioners."

The framers of the charter also knew how to distinguish between residency requirements on "candidates" and ones for sitting officials. Section 4(c) imposes the one-year-residency requirement for "[c]andidates for mayor," as it does for "candidates for the city commission." Yet elsewhere in the charter the "mayor" is separately required to "resid[e] within the city at least one (1) year before

7

qualifying."  In section 4(c), "[c]andidates for mayor" must reside in the city at least one year before the qualifying date, and in section 4(b), the "mayor" must reside in the city at least one year before qualifying.  There is no parallel provision for "city commissioners."  The framers of the charter knew how to require that sitting elected officials reside in a particular place at least one year before an election, but chose not to include that requirement for "city commissioners."  Only for "candidates for the city commission."

There are other clues in the charter that tell us the one-year-residency requirement is a qualification to run for office rather than an eligibility requirement to hold office.  The title of section 4(c) says that what follows is a "[q]ualifications" provision.  See Aramark Unif. & Career Apparel, Inc. v. Easton, 894 So. 2d 20, 25 (Fla. 2004) ("We have previously stated that in determining legislative intent, we must give due weight and effect to the title of the section. The title is more than an index to what the section is about or has reference to; it is a direct statement by the legislature of its intent. (citation and quotation omitted)); Ex parte Knight, 41 So. 786, 788 (Fla. 1906) ("The title is a part of the act, and should be construed as such in determining the subject designed to be regulated by the act."); see also Antonin Scalia & Bryan A. Garner, Reading Law:  The Interpretation of Legal Texts 221 (Thomas/West 2012) ("The title and headings are permissible indicators of meaning.").  And other parts of the charter tell "persons

desiring to run for the office of city commissioner" what they need to do to be "qualified as provided" in section 4(c).

## Spence-Jones v. Dunn

Because the text of section 4(c) requires a one-year residency for "candidates for the city commissioner" and not for "city commissioners," and the title and other parts of the charter refer to section 4(c) as a qualification provision, that should be the beginning and the end of our answer that the one-year-residency provision is a qualification to run for office rather than an eligibility requirement to hold the office. See Schoeff v. R.J. Reynolds Tobacco Co., 232 So. 3d 294, 313 (Fla. 2017) (Lawson, J., concurring in part and dissenting in part) ("[O]ur first (and often only) step in statutory construction is to ask what the Legislature actually said in the statute based upon the common meaning of the words used." (citation omitted)); see also Holly v. Auld, 450 So. 2d 217, 219 (Fla. 1984) ("[W]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." (quotation omitted)). But if we needed to look further at our precedent, it also supports the conclusion that section 4(c) is a qualification requirement to run for office.

We read it that way in <u>Spence-Jones v. Dunn</u>, 118 So. 3d 261 (Fla. 3d DCA 2013). In <u>Spence-Jones</u>, the sitting Miami city commissioner filed to run for a third term. <u>Id.</u> at 262. A former city commissioner who had previously served in the same seat brought a declaratory judgment action "seeking to declare [the sitting commissioner] ineligible for re-election, alleging it would constitute an impermissible third consecutive term." <u>Id.</u>

The court, reading section 4(c), explained that "[t]he sole issue on appeal [was] a question of statutory interpretation." <u>Id.</u> The court found "no ambiguity in the charter provision," and "interpret[ed] it according to its plain meaning." <u>Id.</u> "The charter," we said, "specifically identifies the qualifications required to run for office. Section 4(c), titled 'Qualifications for mayor and city commission,' states 'candidates for the city commission shall have resided within the district at least one (1) year before <u>qualifying</u> and be electors in that district, and shall maintain residence in that district during the duration of their term of office.'" <u>Id.</u> at 263 (emphasis in original) (quoting Miami, Fla., Charter, Part I.A. § 4(c)). The <u>Spence-Jones</u> court interpreted the same unambiguous charter provision we have at issue in this case, and read it as the "qualifications required to run for office."

As if to drive the point home, the <u>Spence-Jones</u> court reiterated that "to qualify for election, the office seeker must have resided within the district for one year." <u>Id.</u> And, "[o]nce again," the court concluded, "the term 'qualified' relates to

10

qualification for election." Id. We left no doubt in Spence-Jones that the one-year-residency provision in section 4(c) is a qualification requirement to run for office.

Burns v. Tondreau

Burns, too, dealt with a North Miami election provision almost identical to section 4(c) of the Miami city charter. There, as here, the unsuccessful candidate in a runoff election filed a post-election challenge under section 102.168(3)(b), alleging that the successful candidate failed to file the residency documentation required by North Miami's election code, and she "had not continuously resided in the City for at least one year prior to qualifying." Burns, 139 So. 3d at 483. The city election code provided that:

> (b) Any person seeking the office of mayor or councilperson must be a resident of the city and/or the respective district of North Miami for at least one (1) year prior to qualifying for office.
> (1) All candidates shall submit a sworn affidavit at the time of qualifying that provides their current address of legal residence and affirms that they have met the residency requirements pursuant to this section. The affidavit shall be on a form provided by the city clerk acting as the supervisor of elections.
> (2) In addition to filing the affidavit, candidates shall submit proof of residency which shall include one (1) of the following documents: voter's registration, driver's license, property tax receipt, homestead exemption, utility bill or lease agreement; all of which must have been in effect for at least one (1) year prior to qualifying.

Id. at 483 n.2 (emphasis added) (quoting North Miami, Fla. Code § 6-78(b) (2014)).

11

This provision, we said, was part of the "qualification requirements necessary to run for office." Id. at 485. Because the unsuccessful candidate's challenge to the winning candidate's qualifications to run for office was post-election, rather than pre-election, we affirmed the trial court's dismissal of the unsuccessful candidate's post-election qualification challenge. "[G]enerally," we agreed, "courts have no inherent power to determine election contests nor do courts have jurisdiction to inquire into a person's qualification to run for office after that person had been duly elected." Id. (emphasis in original) (quoting from the trial court's order).

Here, section 4(c) is almost identical to the North Miami election code at issue in Burns. Section 4(c), like the North Miami election code, required candidates for the city commission to reside in the district at least one year prior to qualifying. Just as Burns read the North Miami election code as a qualification requirement to run for office, so too do we read the similar language in section 4(c) as a qualification to run for office. And just as Burns dismissed a post-election challenge based on the North Miami election code, so too must we affirm the dismissal of a similar challenge in this case. Burns, as the trial court noted in its ruling, compels a dismissal here.

**CONCLUSION**

12

Leon responds that if we read the section 4(c) one-year-residency requirement as a qualification to run for office, rather than an eligibility requirement to hold office, there would be no eligibility requirements for city commissioners. We disagree. We read other parts of the city charter to impose eligibility requirements on mayors, city commissioners, and other officeholders. And the Florida Constitution imposes eligibility requirements on all officeholders in the state. See, e.g., Fla. Const. § 4(a) ("No person convicted of a felony, or adjudicated in this or any other state to be mentally incompetent, shall be qualified to vote or hold office until restoration of civil rights or removal of disability.").

But even if there were no eligibility requirements for city commissioners, the voters of Miami, through their democratically-approved charter, have agreed on the structure of their government, and the rules by which they want their leaders to be elected and serve. Our role is to apply this law as it is written, and not to write-in requirements that are not there or to fix holes that are. See City of Miami Beach v. Berns, 245 So. 2d 38, 40 (Fla. 1971) ("Our duty is to interpret this law as it is written and, if possible, do so in a manner to prevent its circumvention."); Fla. Ry. Co. v. Adams, 47 So. 921, 923 (Fla. 1908) ("It is our duty to declare the law as it is written. We cannot undertake by a construction of the statute to add to it or to subtract from it. Its language is plain and unambiguous."). Doing so subverts our role in the separation of powers, and the will of the people of Miami in consenting

13

to be governed by its founding document. Surely the people of Miami didn't mean to leave out the eligibility requirements in the city charter, Leon says. Surely they did, as evidenced by the text they voted on and approved, we say.

Reading the text of the section 4(c) one-year-residency requirement, and our decisions in <u>Spence-Jones</u> and <u>Burns</u>, we conclude, as the trial court did, that it is a qualification requirement to run for office. Because "courts have no inherent power to determine election contests nor do courts have jurisdiction to inquire into a person's qualification to run for office <u>after</u> that person has been duly elected," <u>Burns</u>, 139 So. 3d at 485 (emphasis in original), and section 102.168(3)(b) does not allow a post-election challenge to a candidate's failure to meet the qualification requirements necessary to run for office, we affirm the trial court's dismissal.

Affirmed.