# Third District Court of Appeal

## State of Florida

Opinion filed November 20, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-1776
Lower Tribunal No. 23-20926
_____

**City of Miami, et al.,**
Appellants,

vs.

**Miguel Angel Gabela, et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Pedro P. Echarte, Jr., Judge.

Victoria Méndez, City Attorney and Kerri L. McNulty, Litigation & Appeals Division Chief, and Eric J. Eves, Assistant City Attorney, for appellants.

Law Firm of Juan-Carlos Planas, P.A., and Juan-Carlos Planas; David J. Winker, P.A. and David J. Winker, for appellee Miguel Angel Gabela.

Before LINDSEY, HENDON and BOKOR, JJ.

BOKOR, J.

The City of Miami appeals a declaratory final judgment interpreting its charter's residency qualification for city commission candidates. Specifically, the City appeals the trial court's interpretation of the residency requirement. In interpreting the city charter, the trial court found city commission district one candidate Miguel Gabela qualified as a candidate for the city commission election on November 21, 2023. The City contends that the trial court erred in interpreting the charter and finding Gabela qualified. The City argues that the plain language of the charter and related city code provisions require a year of continuous residency within a district immediately prior to qualifying, which Gabela fails to meet. We agree with the City that the plain language of the relevant charter provision controls. However, in reviewing the plain language, we agree with the trial court's analysis and the resulting determination finding Gabela qualified to seek office as city commissioner for district one.

## BACKGROUND

Gabela, for the second consecutive election, seeks office as a commissioner for district one in the City of Miami. Gabela resided at 1701 NW South River Drive—located near the edge of district one—since 2000.[1]

---

[1] Miami is governed by a five-member city commission and a mayor. The commission consists of five members elected from districts within the City, numbered one through five. See § 4(b), City of Miami Charter. The

2

Gabela resided at the same address during his unsuccessful candidacy for the district one city commissioner seat in 2019, and it was his residence when he sought the district one seat again this year. Under the former district maps, adopted March 24, 2022, Gabela's residence remained within district one. On June 29, 2023—less than five months before the city commission election, and in response to a federal lawsuit alleging that the districts had been unconstitutionally racially gerrymandered—the current commissioners adopted a resolution approving a new electoral map which moved the district one boundary to place Gabela's property out of that district and into district three.[2]

---

commission itself is responsible for judging the elections and qualifications of its own members, including apportioning the boundaries of the five electoral districts. Id. (d). City commissioner elections are held on the first Tuesday after the first Monday of November in odd-numbered years, with runoffs occurring two weeks later. § 7, City of Miami Charter.

[2] The district court subsequently struck both the original March 2022 maps and the June 2023 remedial maps as unconstitutionally racially gerrymandered and adopted its own interim map, though the United States Court of Appeal for the Eleventh Circuit has since administratively stayed that judgment pending appeal, and the U.S. Supreme Court denied a motion to vacate the stay. See GRACE, Inc. v. City of Miami, No. 1:22-cv-24066-KMM, 2023 WL 4853635 (S.D. Fla. Jul. 30, 2023), stay granted No. 23-12472, 2023 WL 5286232 (11th Cir. Aug. 4, 2023), stay upheld No. 23A116, 2023 WL 5284458 (U.S. Aug. 17, 2023). Gabela alternatively argues that because of the administrative stay, he has in effect continuously resided in district one even after the adoption of the June 2023 map. However, as we conclude that the city charter contains no continuous residence requirement, we decline to address this issue further.

3

Gabela promptly moved for declaratory and injunctive relief seeking to enjoin enforcement of the new district map and determine his eligibility to run in district one. Shortly thereafter, he also moved to a new residence within the new boundaries of district one. The City counterclaimed for declaratory and injunctive relief, and after a hearing, the trial court declared that the city charter's residency requirement mandated that a candidate "shall have resided" within the district for one year at any time prior to qualification, with no requirement of continuous residency up to the date of qualification. Because Gabela resided within the district for well over a year prior to qualifying for the election, he met the qualification requirements and remained eligible for election as district one commissioner. This appeal followed.[3]

## ANALYSIS

The relevant provision of the City of Miami Charter, section 4(c), provides that "candidates for the city commission shall have resided within the district at least one (1) year before qualifying and be electors in that district, and shall maintain residence in that district for the duration of their

---

[3] Our review is de novo. "An order in a declaratory judgment action is generally accorded a presumption of correctness on appellate review. However, to the extent that the decision rests on a question of law, the order is subject to full, or de novo, review on appeal." Reform Party of Fla. v. Black, 885 So. 2d 303, 310 (Fla. 2004) (citations omitted).

term of office." Likewise, section 16-6(b)(3) of the City of Miami Code requires that "[a] candidate for the office of commissioner shall . . . [h]ave resided within the district they wish to represent for at least one year prior to qualifying." The City contends that we must read into these provisions a requirement of *continuous* residence for the year *immediately preceding* qualification. Under that reading, the City argues, Gabela fails to satisfy the residency requirement because he hasn't continuously resided in district one for the past year. The City's reading fails to comport with the plain language of the ordinance.

"Municipal ordinances are subject to the same rules of construction as are state statutes." Rinker Materials Corp. v. City of N. Miami, 286 So. 2d 552, 553 (Fla. 1973). Accordingly, we "must give to a statute (or ordinance) the plain and ordinary meaning of the words employed by the legislative body," and "courts generally may not insert words or phrases in municipal ordinances in order to express intentions which do not appear, unless it is clear that the omission was inadvertent." Id. at 553–54. If the plain language of the ordinance is unambiguous, we are required to apply its plain meaning and are without power to construe it in a way which would modify, limit, or

5

extend those express terms.  See, e.g., Hill v. Davis, 70 So. 3d 572, 575–76

(Fla. 2011); Daniels v. Fla. Dep't of Health, 898 So. 2d 61, 64 (Fla. 2005).[4]

In Leon v. Carollo, 246 So. 3d 490, 495 (Fla. 3d DCA 2018), this court

evaluated the same residency requirement of section 4(c), City of Miami

Charter, and concluded that the residency requirement "unambiguous[ly]"

functioned as a qualification requirement to run for office as opposed to an

eligibility requirement to hold office.  While that's not the issue we examine

here, we echo the admonition in Leon that:

---

[4] "Where a statute is clear and unambiguous, courts will not look behind the statute's plain language for legislative intent." Archstone Palmetto Park, LLC v. Kennedy, 132 So. 3d 347, 351 (Fla. 4th DCA 2014) (citation and internal quotation marks omitted).  The City claims that the trial court's interpretation would lead to an absurd result, based on its subjective reading of the intent of the drafters of the residency requirement.  We see no such problem. There's nothing patently absurd about a charter provision that requires residency within the district without making it a continuous residency requirement.  And even if the City doesn't like the result, "[c]ourts should not resort to the absurdity doctrine merely because of disagreements with the result of legislation." Raik v. Dep't of Legal Affs., Bureau of Victim Comp., 344 So. 3d 540, 549 (Fla. 1st DCA 2022).  As an aside, it appears the more absurd result would be the City's preferred outcome—adding terms and conditions, not present in the text of the charter's residency requirement, to prevent a multiyear district resident from contesting an election where, as here, the boundaries were moved a few houses over mere months before the election.  In any event, where the language of a charter provision or ordinance is "clear and unambiguous," we don't look beyond the plain language or employ canons of construction (including the absurdity doctrine) to determine legislative intent. Gaulden v. State, 195 So. 3d 1123, 1125 (Fla. 2016) (citing Borden v. E.-Eur. Ins. Co., 921 So. 2d 587, 595 (Fla. 2006)). We apply the law as written.

> [T]he voters of Miami, through their democratically-approved charter, have agreed on the structure of their government, and the rules by which they want their leaders to be elected and serve. Our role is to apply this law as it is written, and not to write-in requirements that are not there or to fix holes that are. Doing so subverts our role in the separation of powers, and the will of the people of Miami in consenting to be governed by its founding document. Surely the people of Miami didn't mean to leave out the eligibility requirements in the city charter, Leon says. Surely they did, as evidenced by the text they voted on and approved, we say.

Id. at 496 (citations omitted); see also Spence-Jones v. Dunn, 118 So. 3d 261 (Fla. 3d DCA 2013) (finding the entirety of section 4 of the Miami Charter to be unambiguous). As explained in Leon, we won't—and can't—fix holes or write in requirements that aren't contained in the plain language. Surely the people of Miami didn't mean to leave out a continuous district residency requirement in the city charter, the City says. "Surely they did, as evidenced by the text they voted on and approved, we say." Leon, 246 So. 3d at 496. The City's expression of what it thinks the residency provision should mean conflicts with the plain language and meaning of the words as written.

The charter requires that a city commission candidate "shall have resided within the district at least one (1) year before qualifying" for the election. If a municipality intended to require such residency be for at least one *continuous* year, or for the year *immediately preceding* qualification, it could easily do so. Indeed, two opinions of this court cited by both parties'

7

reference two differently-worded municipal charter residency requirements. One contains the word "continuous" (North Miami), and one doesn't (Miami). Compare Leon, 246 So. 3d at 495 (determining that the City of Miami code requirement that "[a] candidate for the office of commissioner shall . . . [h]ave resided within the district they wish to represent for at least one year prior to qualifying" constituted a qualification requirement), with Burns v. Tondreau, 139 So. 3d 481, 486 (Fla. 3d DCA 2014) (determining that the City of North Miami charter requirement that the mayor "be a *continuous* resident of the City for one year prior to the time of qualification and thereafter" constituted an eligibility requirement (emphasis added)).

We're just determining what the words mean here. The proper interpretation of such words either permit Gabela to run (his position) or deem him not qualified to run (the City's position). "The preeminent cannon of statutory interpretation requires us to presume that [the] legislature says in a statute what it means and means in a statute what it says there." BedRoc Ltd., LLC v. U.S., 541 U.S. 176, 183 (2004) (quotation omitted). The City's argument would require us both to read words into the City's residency requirement that aren't there, and by implication to render the use of the word "continuous" in North Miami's requirement mere surplusage. See Hechtman v. Nations Title Ins. of N.Y., 840 So. 2d 993, 996 (Fla. 2003) ("It is an

8

elementary principle of statutory construction that significance and effect must be given to every word, phrase, sentence, and part of the statute if possible, and words in a statute should not be construed as mere surplusage."); see also Fla. Ry. Co. v. Adams, 47 So. 921, 923 (Fla. 1908) ("It is our duty to declare the law as it is written. We cannot undertake by a construction of the statute to add to it or to subtract from it. Its language is plain and unambiguous."). We decline the City's invitation to add by judicial fiat what the plain language of its charter provision doesn't require.

Further, the City's argument would ignore the meaning of the future perfect tense "shall have resided." The future perfect tense of a verb expresses an action that will be completed at any time before a certain fixed future point in time. For example, a requirement that a student shall have resided on campus for a year before graduation contains no requirement that the student reside on campus as a senior right before graduation. Similarly, the requirement that a candidate to be qualified shall have resided within a district for a year is a discrete act, that Gabela's over 20-year residency in district one satisfies.

The plain language of the City's district residency requirement doesn't require continuous residency, or residency immediately preceding qualification. On the record before us, and the trial court, there's no dispute

9

that Gabela lived within district one for more than one year prior to qualifying. The trial court correctly read the residency requirement of the city charter and the companion requirement of the city code, and properly found Gabela qualified as a candidate for the city commission district one election.[5]

Affirmed.

---

[5] We take no position on the validity of the redistricting itself, which is the subject of the separate federal action.  See GRACE, 2023 WL 4853635, at *1.